Emilio Nunez, J.
In this nonjury action the infant plaintiff seeks damages for personal injuries resulting from lead poisoning and her father seeks to recover hospital expenses.
When Yvette, the infant, was one and one-half to two years old she lived with her father and mother in Apartment 10 at premises 398 East 8th Street in Manhattan. Defendant was the owner landlord of the premises which are a multiple dwelling. The walls of the apartment were cracked and the paint and plaster would peel off the walls and fall to the floor.
The child was seen on many occasions by her parents eating the paint and the plaster. Although they attempted to curb the child, she persisted in eating the plaster and paint at every opportunity.
*860 'She was admitted to Bellevue Hospital on November 21, 1959 where her condition was diagnosed as lead poisoning.
The proof before me shows, and I find, that the lead poisoning resulted from the paint and plaster which the infant ingested in her apartment during several months immediately preceding November 21,1959.
I also find that the broken walls existed for at least three months prior to November, 1959 and that defendant had notice of such condition.
I find further that said condition existed in violation of the section of the Multiple Dwelling Law requiring the owner of such premises to keep each and every part thereof at all times in proper repair.
Was this occurrence reasonably forseeable within the meaning of the law? The defendant takes the position that it was not.
That small children go around the house picking up everything within their reach and placing it in their mouths and attempting to eat it is well known. They often have a craving to put in their mouths and eat most unusual things. It would not be unreasonable, therefore, to foresee that Yvette would pick up pieces of plaster and paint if they were lying around and eat them. On the other hand, it is well known that paint contains lead which may cause lead poisoning to anyone ingesting it.
Section 173.13 of the Sanitary Code provides that “ no person shall use a paint containing more than one percent of metallic lead based on the total nonvolatile content of the paint, on the interior walls, ceilings or window sills of any apartment or room in any dwelling. ’ ’
I believe this section was enacted in 1959. It is not claimed the defendant violated the terms of this section, nor do I find that it did. I merely cite this provision of law to show that the defendant should have known that the paint on the walls of this apartment contained lead which might be harmful to the occupants of the apartment.
As the jury I find that in the setting and surrounding conditions which existed at the premises in question, the hazard which the broken walls presented should have been reasonably forseeable to the landlord. Given the broken walls and plaster, the lead content in the paint (established at the trial by the biochemist), the child in the apartment, the known propensities of children and the results that followed, I find that Yvette became ill with lead poisoning as a direct result of the defendant’s negligence in failing to keep the premises in question in proper repair.
*861 Yvette was in Bellevue Hospital for two months and four days but her condition cleared up completely and there are no remaining effects.
I believe that the sum of $2,500 will adequately compensate her for the injuries sustained. The hospital bill was $1,820, and I award judgment to Ramon Acosta, the father, in that amount.