Belinda NORWOOD, a Minor, by Tony Norwood, her father and Next Friend, Plaintiff-Respondent,

v.

Raymond LAZARUS and Mrs. Raymond Lazarus, and Eli Bukovich, Defendants-Appellants.

Nos. 43371, 43373.

Missouri Court of Appeals, Eastern District, Division One.

May 25, 1982.

Robert C. Ely, St. Louis, for Lazarus.

Edward S. Meyer, St. Louis, for Buko-vich.

Mark I. Bronson, St. Louis, for respondent.

STEWART, Presiding Judge.

Belinda Norwood, an infant by next friend brought an action for injuries received by reason of lead poison alleged to have occurred at premises owned by defendants Mr. and Mrs. Raymond Lazarus and later at other premises owned by defendant Eli Bukovich. Defendants Lazarus and defendant Bukovich appeal from the judgment entered upon a jury verdict awarding plaintiff damages in the sum of $9,350.00. We affirm.

The defendants contend that (1) there was no substantial evidence to sustain the verdict; (2) the amount of the verdict was so excessive as to indicate bias and prejudice on the part of the jury; and (3) defendants Lazarus contend that the court erred in submitting the verdict directing instruction as to them.

When considering the question of the sufficiency of the evidence to warrant submission of a cause to the jury, we view the facts in the light most favorable to the plaintiff. *Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 569 (Mo.App.1977).

Plaintiff, Belinda Norwood, was two years of age and living with her parents, Tony Norwood and Evelyn Grayson at 2704 St. Louis Avenue, St. Louis, Missouri, in 1972. The family rented a three room apartment at that address from defendants Lazarus. There were seven other apartments on the second floor above a store operated by defendants, and a common hallway served the apartments. In 1972, paint flaked from the walls of the hallway and there were flakes of paint on the floor.

Plaintiff played in the hallway in 1972 and on occasion was left alone in the hallway. Plaintiff's parents left the door between the hall and apartment open when plaintiff was playing in the hall. Mr. Lazarus came up to the hallway in the summer of 1972 and saw plaintiff playing in the hallway. She was seen by her parents eating flakes of paint that fell from the wall to the floor of the hall in the summer of 1972 and the spring and summer of 1973. When her parents saw her eating paint chips, they spanked her and told her not to do that. In January, 1973, she was taken to the hospital with a fever; the diagnosis was "acute pharyngitis."

Hospital records indicate that plaintiff was admitted August 30, 1973 for high lead levels in the blood. She was hospitalized from September 4, 1973 to September 11, 1973 for chronic lead poisoning. She was again hospitalized on October 16, 1973 because of high levels of lead in her blood. She was discharged October 22, 1973.

An inspection was made of the Lazarus' property by the Lead Poison Control Unit of the City of St. Louis. Samples taken in the apartment occupied by plaintiff and her parents were negative. The sample taken from the common hallway was positive. There was 1.8% lead in the paint. Mr. and Mrs. Lazarus were sent a violation letter on June 14, 1972. A violation letter advises the recipients of the presence of lead paint and gives them 14 days in which to correct the deficiency. There is nothing in the records of the Lead Control Unit that would indicate whether there had been compliance with the violation letter.

In October of 1973, plaintiff's parents received an eviction notice and in November, 1973, they moved into one of the units of a four family flat at 3114 North Sarah Avenue.

During the summer of 1973, the hallway walls at the Lazarus property were scraped and painting was started. It had not been completed when plaintiff's parents moved. Flakes of paint remained in the hallway during all this time.

The flat that plaintiff's parents occupied commencing in November, 1973, was owned by defendant Eli Bukovich and managed by his brother Pete Bukovich. The building consists of two stories with two units upstairs and two units downstairs with a common porch in front and rear. Pete Bukovich inspected the property at least once a week.

Both the front and back porch at 3114 North Sarah had flaking paint. Plaintiff played on both the front and back porch and was seen eating paint flakes. Plaintiff was hospitalized for lead poisoning on December 26, 1973 and discharged January 2, 1974. An inspection by the Lead Control Unit made in April of 1974 showed 4% lead content in the paint on the porch.

In addition to the periods of hospitalization mentioned above, plaintiff made regular visits to the clinic for tests. The records show 21 visits to the clinic through May 24, 1974. One visit in 1975, 1976 and 1978.

Other facts necessary to the determination of particular issues will be set forth as those issues are discussed.

In addition to common law negligence, plaintiff pleaded a violation of an ordinance of the City of St. Louis with respect to lead paint. Plaintiff concedes that she abandoned her cause of action based upon the ordinance and submitted her case on the theory of common law negligence. We need not discuss the ordinance.

In contending that plaintiff did not make a submissible case, all of the defendants rely heavily upon *Weaver v. Arthur A. Schneider Realty Co.*, 381 S.W.2d 866 (Mo. banc 1964). In *Weaver*, the court sustained the trial court's dismissal of plaintiff's petition in an action for damages occasioned by lead poisoning to a child sixteen months of age. The court there recognized the obligation of the landlord to keep the common portions of the premises in repair and in a reasonably safe condition and the liability of the landlord for failure to do so. The court in sustaining the dismissal based its opinion upon the 1948 Supplement to § 435(2) of the Restatement of Torts that reads as follows:

" 'The actor's conduct is not a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.' "

The court then holds at p. 869:

"Looking back from the harm to plaintiff to defendant's negligent conduct, our view is that the result (plaintiff being in the hallway and sustaining injury by putting fallen plaster in her mouth) does appear to be so highly extraordinary, under the facts alleged, as to prevent defendant's conduct from being considered the legal cause of it, when there is nothing in the petition to show that defendant knew or had any reason to expect that such small children would be in the hallway unattended."

This places a great deal of stress on the word "unattended." We do not believe the opinion should be read as narrowly as defendant would have us read. We are not persuaded that the reasoning in *Weaver* requires that emphasis. We base this upon a reading of earlier comments by the court where it distinguished *Acosta v. Irdank Realty Corp.*, 238 N.Y.S.2d 713, 38 Misc.2d 859 (1963). The court said, l. c. 867:

"In this case, the defective condition was in a common hallway and it is not alleged that such small children as plaintiff were ever in the hallway alone or allowed to play there or that defendant had any notice of the presence of such small children there or any reason to expect them to be in the hallway without an older person in charge."

We do not read this as an absolute holding that defendants must know that children played in the hallway *unattended.*

■ As to defendants Lazarus, there was sufficient evidence to permit a jury to find that there was lead based paint in the common hallway that flaked and fell upon the floor and as a result violated the duty that defendants owed to their tenants. They were thereby negligent. *Weaver, supra*, at 867. The issue which we must determine is whether it can be said that the injury to plaintiff was a natural consequence of defendants' negligence. Paraphrasing *Weaver*, looking back from the harm to plaintiff to defendants' negligent conduct, was the result (plaintiff being in the hallway and sustaining injury by putting fallen paint flakes in her mouth) so highly extraordinary as to prevent defendants' conduct from being considered the legal cause of plaintiff's injury?

In our determination we consider that the exercise of ordinary care where children are concerned requires more vigilance and caution then might be required with respect to an adult. *Howard v. Lundry*, 591 S.W.2d 193, 197 (Mo.App.1979). We also take judicial notice of the known characteristic of small children; their curiosity and propensities. *Haberly v. Reardon Co.*, 319 S.W.2d 859, 868 (Mo. banc 1958); *Howard v. Lundry, supra*. It is well known that children of tender years have a proclivity to put anything they can get into their hands into their mouths. *Acosta v. Irdank Realty Corp., supra*.

Defendant Raymond Lazarus operated a store on the ground floor of the building in which plaintiff lived. He had occasion to be in the common hallway. Plaintiff's mother saw him there on one occasion while plaintiff was playing in the hallway. Plaintiff's father also testified that he saw Mr. Lazarus in the hallway while plaintiff was playing there. Mr. Lazarus testified that one of the walls in the hall was affected by the winter weather and in the spring the paint would flake. He further testified that he corrected the situation every spring. Mr. Lazarus had actual knowledge that there was lead in the paint on the wall as early as June of 1972. He contended that he corrected the situation but this was disputed.

While we would not hold that plaintiff had to assume the burden of showing that she was unattended while playing in the hall, we believe there was sufficient evidence from which it could be inferred that at times she would be unattended while at play in the hallway. Mr. Lazarus saw

plaintiff playing in the hall apparently on two occasions. Parents, in tending children, are often required to divert their attention. Even momentary inattention would give an active child the time to place paint flakes into its mouth.

As to defendants Lazarus, the jury could find the plaintiff was in a common area of the property in a place where she had a right to be; defendants knew that she played in the area and would be unattended at times; that there were flakes of lead paint in the hall and plaintiff could be expected to put the paint flakes in her mouth. There were sufficient facts from which the jury could find defendants Lazarus' negligence was the legal cause of plaintiff's injury. Under the circumstances of this case, we do not find plaintiff's conduct and resulting injury so highly extraordinary as to preclude recovery.

■ Defendant Bukovich contends that he did not have actual or constructive knowledge that there was lead paint on the porch and that it flaked. There was evidence by Pete Bukovich that he inspected the premises weekly and that he purchased the paint used on the premises. Mr. Bukovich testified he used water based paint. There was also evidence that the Lead Control Unit found evidence of lead based paint. There was evidence that the level of lead in plaintiff's blood rose during the time she lived in the premises. The jury was not required to believe Mr. Bukovich's testimony particularly in view of the finding of the Lead Control Unit and the increase of the level of lead in plaintiff's system. The question of credibility has been determined by the jury and as stated above, we must view the facts in the light most favorable to the plaintiff, ignoring defendant's evidence unless it is favorable to plaintiff. *Winters v. Sears, Roebuck and Co., supra* at 569. There was sufficient evidence to warrant a finding that there was lead base paint on the porch and that it flaked and was ingested by plaintiff and that Pete Bukovich, who saw to the purchase of the paint, knew or should have known of the presence of lead paint.

This defendant also contends that there was no substantial evidence that defendant Bukovich was the legal cause of plaintiff's injuries. This defendant also relies upon *Weaver v. Arthur A. Schneider Realty Co.,* 381 S.W.2d 866 (Mo. banc 1964).

■ At the time plaintiff and her parents moved into the Bukovich premises, plaintiff was four years of age. The porch was used in common by all of the tenants of the building. The defendant was under a duty to keep those portions of the premises over which he retains control in a reasonably safe condition and is liable to tenants and those on the premises at the invitation of tenants for injury resulting from such unsafe condition. *Lemm v. Gould,* 425 S.W.2d 190, 194 (Mo.1968). Plaintiff had a right to be on the common porch and defendant could reasonably expect a four year old child to be playing outside without the constant supervision of her parents. It was foreseeable that plaintiff would be outside and would use the porch as other children do, that at her age she would still be putting things into her mouth considering the propensities of children and the circumstances in this case. We find that the result as to defendant Bukovich was not so highly extraordinary as to preclude recovery by plaintiff. *Weaver v. Schneider, supra.*

Defendants Lazarus claim that the giving of plaintiff's verdict directing instruction was erroneous in that there was no substantial evidence that defendants Lazarus had actual or constructive knowledge that there was lead paint in the hallway. What we have said with respect to the basic contention of defendants Lazarus above has disposed of the contention now under consideration.

All of the defendants contend that the court erred in failing to grant a new trial because the jury award was grossly excessive and engendered by the bias and prejudice of the jury. They first contend that the excessive award resulted from the misconduct of a juror. Defendants also contend that the size of the verdict alone indicates bias and prejudice on the part of the

jury. They argue that plaintiff had no symptoms and no discomfort therefore she had no injury.

At the hearing on the motion for new trial, one of the jurors testified that when she retired to the jury room she recalled that she had seen a television news story which she believed to be about the plaintiff and her parents. This newscast had taken place a considerable time before the case. Plaintiff made a timely and proper objection to this evidence. Under the circumstances, the evidence was inadmissible. A juror may not impeach his or the jury's verdict. *Mayberry v. Clarkson Construction Co.*, 482 S.W.2d 721 (Mo.1972). Although we could say that the facts as presented in that testimony did not develop any bias or prejudice on the part of the jurors as evidently found by the trial court, we may not consider this evidence.

Defendants do not seek remittitur; they do not claim that the verdict is excessive as a result of mistake on the part of the jury in weighing the evidence and setting the award. Their sole claim is that the verdict is so excessive as to indicate bias and prejudice on the part of the jury, an allegation of misconduct on the part of the jury. A trial court may weigh the evidence and infer bias and prejudice from the size of the verdict alone because it is in a position to observe the effect of the trial proceedings upon the jury. We may not weigh the evidence. *Smith v. Archbishop of St. Louis*, 632 S.W.2d 516 (Mo.App.1982).

Plaintiff had a toxic condition that, if untreated, could result in brain damage. She was required to submit to blood tests on a regular basis so that her condition could be monitored. She went to the clinic on some 21 occasions. The condition required hospitalization on three occasions for a total of 23 days. Treatment consisted of injections of calcium versanate. Clearly plaintiff suffered an injury which required treatment.

There was an injury to plaintiff. The trial court made a determination that the award of the jury was not so excessive as to show bias and prejudice on the part of the jury. We may not disturb the finding of the trial court.

Plaintiff asked that we dismiss defendant Bukovich's appeal because this court improvidently issued a special order permitting this defendant to file a late appeal under Rule 81.07. We find no merit to this request and decline discussion of the issue.

The judgment of the trial court is affirmed.

STEPHAN and BLOOM, JJ., concur.