640 A.2d 1358

Shakeema FELTON, a Minor, by her Parent and Natural Guardian, Lucretia FELTON and Lucretia Felton in Her Own Right, Appellants,

v.

Jessie SPRATLEY, Executor of the Estate of Maria Spratley, A/K/A Marie Beatrice Taylor Spratley, a/k/a Marie Taylor Spratley and Mollucye Spratley Pearson, Executrix of the Estate of Marie Spratley, A/K/A Marie Beatrice Taylor Spratley, A/K/A Marie Taylor Spratley, Appellees.

Superior Court of Pennsylvania.

Submitted Nov. 22, 1993.

Filed April 29, 1994.

Edwin L. London, Philadelphia, for appellants.

Josh M. Greenbaum, Philadelphia, for appellees.

Before BECK, POPOVICH and CERCONE, JJ.

POPOVICH, Judge.

We are asked to review the grant of the motion for summary judgment against the plaintiffs/appellants, Shakeema Felton, a minor by her parent and natural guardian Lucretia Felton, and Lucretia Felton in her own right. We affirm.

When reviewing a trial court's imposition of summary judgment, we have stated:

Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. To determine the absence of a genuine issue of material fact, we must view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of summary judgment. In so doing, we accept as true the well-pleaded facts in appellant's pleadings and give appellant the benefit of all reasonable inferences to be drawn therefrom. Summary judgment is appropriate only in those cases which are clear and free from doubt.

*Dume v. Elkcom Co.,* 368 Pa.Super. 280, 533 A.2d 1063, 1065 (1987) (Citation omitted).

Instantly, the plaintiffs filed a complaint against the defendants/appellees, Jessie Spratley and Mollucye Spratley Pearson, Executor and Executrix, respectively, of the Estate of Marie Spratley alleging that the minor-child Felton, beginning with May of 1989 and for a long time prior thereto, ingested paint chips while she and her mother (Lucretia Felton) resided with the grandmother (Ms. Long). The apartment in which the trio lived was owned by and/or within the control of the late Marie Spratley, "who was then and there responsible

for the care and maintenance of the [rented] premises." Paragraph 7.

Liability was premised upon the "negligence and carelessness" of the defendant—Marie Spratley resulting in the sustaining of injuries by the minor-child Felton entitling her to judgment. An answer with new matter was filed and followed by the defendants' motion for summary judgment, wherein it was stated they were "unaware" of and did not cause any hazardous condition on the premises. In fact, it was contended that the minor-child and her mother were well aware of the conditions which existed but failed to notify the defendants of the peeling/chipping paint which existed while the premises were held solely by Ms. Long. See Exhibit "C" (Long's Deposition at pages 41–42, 51). Thus, argued the appellees, "they were not obligated to correct a condition of which they had no knowledge and of which the plaintiff's mother . . . [and] grandmother . . . were fully aware." Paragraphs 10 and 11.

Further, the defendants cited various sections of the plaintiff's mother's deposition wherein she stated that, between October of 1988 through May of 1989, but prior to the minor-child's illness, she was never concerned about the condition of the apartment (peeling paint) sufficient to report the matter to the defendants.[1] See Appellees' Memorandum of Law in Support of Motion for Summary Judgment at 5–7. Accordingly, averred the defendants, the landlord may not be held strictly liable for unknown conditions under the ruling of *Kolojeski v. Deisher, Inc.*, 429 Pa. 191, 239 A.2d 329 (1968).

The plaintiffs countered with the argument that at the time of the *Kolojeski* decision the hazards of lead-based paint were not widely known. However, ". . . it no longer requires such expertise or training. As the hazards of lead paint poisoning were by 1987 [—date property purchased by defendants' decedent was April 15, 1964—] commonly known to the general public * * * [And, a]s judicial notice of the widespread use of lead based paint was proper in 1968, it remains equally appropriate for 1987. But, in 1987, the dangers and hazards

1. Less than one month after the defendants were notified of the "chipping paint" the old paint was removed and the premises repainted.

were equally well known and therefore judicial notice of the hazards would be equally as appropriate as was the judicial notice of the widespread use in 1968." See Plaintiffs' Reply to Defendants' Motion for Summary Judgment at 5–7.

Yet the plaintiffs admitted that: "Society in general may not be 'fully' aware of the hazards of lead paint, as society in general is not 'fully' aware of the ramifications of most hazards." *Id.* at 7. Nonetheless, the plaintiffs acknowledged that the defendants lacked actual notice of the presence of lead-based paint in the apartment, but charged that the "Defendants should have known, which must be resolved by the trier of fact." *Id.* at 10.

Oral arguments were heard by the court, after which the defendants' motion for summary judgment was granted on the following grounds:

In their motion for summary judgment, defendants executor and executrix of the landlord's estate assert that plaintiffs were aware of the peeling paint and hazardous condition. But failed to notify the landlord under [*sic*] after the child became ill from ingesting the paint.

They assert further that their first notice of any lead paint was when they were notified by the Philadelphia Health Department. This notification also came after the child had become ill from ingesting the paint. The landlord subsequently repainted the apartment about a month later.

At the oral argument in this matter, plaintiff conceded that the landlord had no actual notice from the tenant of any defective or dangerous condition. As the evidence that he asserts for constructive notice, plaintiff's counsel asserts that there is general knowledge of the hazards of lead paint.

The assertion of no actual notice was supported by deposition testimony and it is conceded to. Under the circumstances, the court is constrained by the holding of the supreme court in the matter of Koljeski [*sic*] versus Deischer, Inc. found at 239 A.2d 329. The court in Koljeski [*sic*] stated that where the landlord had no notice that the walls were painted with lead paint until after the premises had

been professionally inspected, and after the plaintiff had been treated for lead poisoning, [he] could not be held liable for the injuries. And the supreme court reasoned that absent any provision in the lease or statutory requirement, the landlord had no affirmative duty to inspect the premises for lead paint.

This court may or may not agree with that decision. However, the court must follow the lead of the supreme court in this matter. The court notes that the public knowledge of the dangers of lead paint has increased. The court cannot find as a matter of law, however, that landlords have an affirmative duty to rid all premises of this potential hazard.

Therefore, the motion for summary judgment is granted and the complaint against the defendants is dismissed. N.T. 7/6/93 at 14–16. Thereafter, the plaintiffs filed a timely appeal raising three issues for our review, the first of which asks: "Whether a landlord can be held responsible for failure to remove lead based paint from the demised premises when the landlord does not have actual notice, but only constructive notice[?]" Further, the plaintiffs argue that the "constructive notice" issue should be decided in the context of a trial and not in a motion for summary judgment.

 Preceding our resolution of the issue posed, we deem it prudent to set forth certain well-settled legal propositions concerning the general liability of a landlord to his tenant for injuries received by the tenant on the premise; to-wit:

(a) in the absence of any provision in the lease, a landlord is under no obligation to repair the leased premises, to see to it that they are fit for rental or to keep the premises in repair ...; (2) a tenant takes the premises as he finds them and the landlord is not liable for existing defects of which the tenant knows or can ascertain by a reasonable inspection ...; (3) a landlord out of possession, however, may be liable (a) where he conceals a dangerous condition of which he has knowledge and cannot be expected to discover and (b) where he knows or should know of a dangerous condition and leases the premises for a purpose involving a "public

use" and has reason to believe the tenant will not first correct the condition ...; (4) a landlord of a multi-tenanted building, reserving control of the common approaches, such as sidewalks, passageways, etc., or parts of the building common to all tenants, such as the roof and walls, is bound to keep such approaches and parts reasonably safe for the use of tenants and their invitees and a landlord becomes liable where he either had actual notice of a defective condition therein or was chargeable with constructive notice, because had he exercised reasonable inspection he would have become aware of it....

*Lopez v. Gukenback*, 391 Pa. 359, 137 A.2d 771, 774–775 (1958) (Citations omitted). Accord *Kolojeski*, supra; *Brown v. Marathon Realty, Inc.*, 170 A.D.2d 426, 565 N.Y.S.2d 219, 220–221 (1991).

Instantly, it is undisputed that the defendants had no actual knowledge of the lead-based content of the paint or that it was chipping/peeling prior to notification from the appropriate governmental authorities, which resulted in a rectification of the matter within a month of notice.

As a consequence, the plaintiffs proffer the novel argument that the level of knowledge relating to the hazards associated with the use or presence of lead-based paint proliferated to the stage that "[b]y 1987 [—plaintiff's ingestion of lead-based paint allegedly occurred in May of 1989 and prior thereto—] it was commonly known to the general public and certainly should have been known [constructive notice] to one who rents low income housing, such as the defendants * * * [so as to] creat[e] an affirmative duty to inspect for and remove lead paint." Appellant's Brief at 7 and 9.

To buttress their "constructive notice" assertion as to the dangers of lead-based paint, the plaintiffs point to a 1966 Philadelphia Health Code (Section 6–403 recognizing the hazards of the product), an Act of Congress (requiring the discontinuation and removal of lead paint in federal housing (42 U.S.C. § 4801 et seq.)) and seven (7) newspaper reports from the Philadelphia area spanning 1986–1991 on the topic of

the dangers of lead paint, with a final reference to a 1991 magazine article on the same subject.

Overriding our decision of whether to ascribe to the defendants "constructive notice" of the dangers of lead-based paint, and the failure to remove it from the plaintiffs' apartment in advance of a complaint being lodged, is the *Kolojeski* ruling.

In *Kolojeski*, the Court reviewed the grant of preliminary objections in favor of the defendants/landlords, who had been sued by the tenants/parents of a minor-child who had died of lead paint poisoning. "Reduced to its essentials, the complaint allege[d] that appellees were negligent in allowing the living room woodwork paint job to deteriorate to the point where paint peeled and fell therefrom; and in using lead base paint, which is poisonous if consumed." 429 Pa. at 193, 239 A.2d at 330.

The *Kolojeski* Court, in sustaining the preliminary objections, wrote:

> Appellants' only possible basis for recovery must arise from the use by appellees of lead base paint. Such use would support liability only if such use constituted the creation of a dangerous condition of which appellees had knowledge and of which appellants had no knowledge. In this connection, appellants cite a New York decision which we, as did the court below, find to be inapposite. The decision in that case was bottomed on the violation of a law requiring the landlord to make repairs. No such situation exists here. Although the situation is tragic, we cannot help but agree that the use of lead base paint in these circumstances cannot constitute actionable negligence. The court below aptly stated: "Plaintiffs have cited no judicial decisions in this jurisdiction or any statute or ordinance which would justify a conclusion that the use of a lead base paint constitutes negligence. * * * In the absence of compelling authority, we cannot find that the use of lead base paint constitutes negligence, as we take judicial notice that the use of such paint is common and widespread." Were we to conclude otherwise, we would be required to ascribe to

appellees a knowledge and expertise not ascribable, at least at the time of this incident, to people without special training or experience.

429 Pa. at 193–195, 239 A.2d at 330–331. Justice Roberts, joined by Musmanno, J., dissented on the grounds that the complaint stated a cause of action by alleging that the woodwork was in a dangerous condition as a result of its chipped/peeling state and the fact that it had been painted with a poisonous lead-based paint; all of which was known or, by the exercise of ordinary care, should have been known by the defendants.

Given the result reached, it is obvious that the Majority in *Kolojeski* was not persuaded to adopt a per se rule of negligence (which, in essence, would have translated into a strict liability standard) in cases involving the use of lead-based paint in rental property by landlords. See *Garcia v. Jiminez*, 184 Ill.App.3d, 107, 132 Ill.Dec. 550, 539 N.E.2d 1356 (1989) ("... plaintiff asserted that defendant should have been precluded from denying knowledge that the premises contained lead-based paint. In so arguing, plaintiff seeks to impose a form of strict liability on landowners whose property contains lead-based paint. Such a result is not contemplated by the cases.").

▇ Moreover, unlike the appellants, we find that *Kolojeski's* holding that a property owner, absent actual notice of a hazardous condition on the premises, will not be liable to a tenant for injuries flowing from such a condition is still law in this Commonwealth. As applicable to this case, it is conceded by the appellants that the appellees had no actual notice of the lead paint in the premises. N.T. 7/6/93 at 6, 14–15. This would appear to undermine the appellants' cause of action sounding in negligence against the appellees under the teachings of *Kolojeski*. However, this does not bring an end to the case.

It is the appellants' contention that the dearth of information on the hazards of lead-based paint has burgeoned since the 1968 *Kolojeski* decision to the point that the appellees

should be held to have had "constructive notice" of the dangers of lead paint. This constructive notice, urges the appellants, created an affirmative duty on the appellees' part to inspect for and remedy such a condition upon discovery. The failure to do so here, continue the appellants, constitutes negligence.

Generally, the application of the doctrine of constructive notice is the result of bad faith on the part of the party charged with notice. A person is charged with having constructive notice when he has knowledge of facts putting him upon inquiry. Once the *duty* to inquire is raised, the party is deemed to have such knowledge as he would have acquired by the exercise of ordinary intelligence and understanding.

A party is not charged with a duty to make an inquiry unless the allegedly-provoking information has come from a source entitled to respect. A person is not put on notice by general rumor, the loose conversation of bystanders, or published notices or the distribution of hand bills, *at least unless it is established that the party saw the material.* It has generally been held that matter not only must be information directly communicated to the party, but must come from an authentic source which a person would be careless to disregard.

P.L.E. Notice § 3 at 124–125 (Emphasis added; footnotes omitted). Further, in the same vein, it has been written that:

The knowledge or notice of a defect or danger which is necessary in order to impose liability for negligence need not be actual, but before knowledge of a dangerous condition in an instrumentality can be visited constructively the situation must not only have existed for a sufficient length of time to enable it to be duly discovered, but it must also be capable of ascertainment upon the inspection, observation, or supervision *legally* required of the one sought to be bound with such knowledge.

P.L.E. Negligence § 23 at 42–43 (Emphasis added; footnotes omitted).

Based on the preceding, to hold the appellants accountable necessitates a finding that "inquiry" on the part of the landlord rose to the level of a "duty", and would lead to the knowledge of a requisite fact by the exercise of ordinary diligence and understanding. *Pennsylvania Range Boiler Co. v. City of Philadelphia,* 344 Pa. 34, 23 A.2d 723, 725 (1942). As applied instantly, the liability of a landlord to a tenant premised on a negligence theory must be established by proof of some direct omission by the lessor of the performance of a *duty* which he/she owed to the lessee in order to make the landlord liable. See *Groover v. Magnovox Co.,* 71 F.R.D. 638, 640 (W.D.Pa.1976), citing *Kolojeski,* supra; *Harris v. Lewistown Trust Co.,* 326 Pa. 145, 191 A. 34 (1937).

The appellants have failed to point to any authoritative source holding that a landlord has a duty ("legally" imposed) to inspect for the presence of lead-based paint in rental property, the failure of which constitutes negligence. For instance, the 1966 Philadelphia ordinance (acknowledging the dangers of lead-based paint) cited by the appellants preceded by two years the *Kolojeski* decision. Yet, no mention of its existence or impact on *Kolojeski* appears, despite the fact that the ordinance and case originated in Philadelphia County. We, therefore, place little weight upon an ordinance given no recognition by the courts at the time of *Kolojeski.*

The relevance of the newspaper reports and magazine article on lead-based paint referred to by the appellants fare no better. There is no averment that the appellees "saw the material" to place them on "constructive notice" to inquire into the presence of lead-based paint in the apartment in question. See P.L.E. Notice § 3 at 124.

Lastly, the 1971 Act of Congress is a piece of legislation which prohibits the application of lead-based paint on any utensil, toy or furniture and residential structure constructed or rehabilitated by the federal government. See 42 U.S.C.A. § 4831(a)–(c). Yet, the promulgation of affirmative steps to "remov[e and] ... eliminat[e] such hazards" have been restricted to purchasers and tenants of all HUD–associated housing constructed prior to 1978. See 24 C.F.R. Part 35

(April 1, 1993); 42 U.S.C.A. § 4822 et seq. Thus, we have been presented with no authoritative sources directing the imposition of a duty to inspect for lead-based paint in the private sector where commercial property is concerned, the failure of which will be labelled an act of negligence.

■ We have examined the cases referred to by the appellants in support of their argument that we adopt a rule which ascribes an affirmative duty upon a landlord to inspect his/her rental property for lead-based paint. No case cited by the appellants makes such a bold and expansive endorsement of the law of negligence between landlord and tenant.[2] We are not persuaded to do so now.

2. See *Acosta v. Irdank Realty Corp.*, 38 Misc.2d 859, 238 N.Y.S.2d 713 (1963), where the court found that the landlord, unlike the case here, *had knowledge* of the broken walls in the apartment rented to the minor-child's parents containing lead-based paint, and, therefore, the defendant was negligent in failing to keep the premises in proper repair. In *Garcia v. Jiminez*, 127 Ill.2d 615, 136 Ill.Dec. 585, 545 N.E.2d 109 (1989), the plaintiff proved that the premises contained lead-based paint, thus establishing the existence of a dangerous condition, and the defendant denied actual or constructive knowledge of the condition. The jury found in favor of the defendant. On appeal, the judgment in favor of the defendant was upheld and the court refused to impose a form of strict liability on landlords whose property contained lead-based paint, as is being attempted by the plaintiffs here with the endorsement of a constructive notice approach found wanting by this Court.

Next, the case of *Tillman v. Johnson*, 612 So.2d 70 (La.1993), dealt with a reversal of a motion for summary judgment in favor of the defendants. The court ruled that a genuine issue of material fact existed as to whether the lead-based paint on the defendants' properties presented an unreasonable risk of harm to the plaintiff's minor-child for purposes of *strict liability* under La.Civ.Code art. 2317. Similarly, in *Hardy v. Griffith*, 41 Conn.Sup. 283, 569 A.2d 49 (1989), the court held that the defendants breached a state statute and local ordinance requiring that paint in premises which did not conform with federal standards shall render the dwelling unit unfit for human habitation. Also, the general state statute (§ 47a–7(a)(2)) imposed an *affirmative duty* upon the landlords to make all repairs to keep premises in a fit and habitable condition and a violation of the ordinance, for the protection of the public, was construed as negligence as a matter of law.

No similar pieces of legislation exist in Pennsylvania, and we are not ready to adopt a strict liability approach in lead-based cases concerning landlords and tenants.

The appellants also cite *Norwood v. Lazarus*, 634 S.W.2d 584 (Mo. App.1982): the plaintiffs' award of damages for their child's ingestion

If a more stringent standard of care is to be applied to the landlord whose premises contain lead-based paint, the more appropriate forum to respond with such a rule would be the legislature. See, e.g., Residential Lead–Based Paint Hazard Act, 42 U.S.C.A. § 4851 et seq.[3] Thus, absent any statute on the subject and the continued viability of *Kolojeski*, we will affirm the judgment in favor of the appellees.[4] Cf. *Dunson v.*

of lead-based paint in different rental apartments owned by the defendants (Lazarus & Bukovich) was upheld, for in the case of the former defendant it was concluded that he had *knowledge* of the lead-based paint. As for the co-defendant Bukovich, despite his denial of actual or constructive knowledge that there was lead paint on the premises and it flaked, the evidence was held by the court to be sufficient to warrant a finding that there was lead base paint on the porch and that it flaked and was ingested by the child and that Bukovich, who saw to the purchase of the paint, knew or should have known of the presence of lead paint.

Lastly, our own search has produced the case of *Underwood v. Risman*, 414 Mass. 96, 605 N.E.2d 832 (1993), wherein the judgment in favor of the plaintiffs was reversed for the defendant was not subject to liability under a state statute for not disclosing the possibility of lead-based paint in a residential dwelling to childless prospective tenants.

Although liability would attach under the statute for nondisclosure of the hazards associated with lead-based paint, the court refused to impose liability for nondisclosure of a fact *not* known to the person against whom liability is sought. Which is the case instantly.

Additionally, unlike the cases reproduced supra, we have neither a statute nor knowledge on the part of the landlord warranting the attachment of liability for the plaintiff-child's ingestion of lead base paint, let alone creating a strict liability standard of care in landlord-tenant scenarios where lead-based paint has been ingested by a child.

3. Even so, a review of the federal legislation discloses that it was not until 1992 that more aggressive steps were implemented to inspect and remove lead-based paint from residential properties, and, then, it was restricted to the federal government's involvement as either refurbishing agent or initial contractor. No effort has been made to address the problem of lead-based paint in the private sector.

4. Given our ruling on the initial issue, we do not deem it necessary to respond to the appellants' second question of: "Whether the Court should take notice of the widespread knowledge of the dangers of lead based paint, especially in dwellings where there are young children." The matter is rendered moot under *Kolojeski*, supra.

Likewise, in regard to the third claim proffered by the appellants'; to-wit: "Whether the implied warranty of habitability holds the landlord strictly liable, based upon constructive notice, for the continued existence of lead-based paint upon the premises which lead paint caused injury to children residing therein[?]", we find that the appellants failure to list such a theory of recovery anywhere in their complaint

*Friedlander Realty,* 369 So.2d 792, 794–795 (Ala.1979) (Dismissal of complaint for failing to state a claim upheld on appeal with court's holding that, even if landlord knew of lead-based paint on walls, it was not reasonably foreseeable that children would be injured by the paint on the premises rented to the father).

Order affirmed.[5]

CERCONE, J., joins and files a concurring opinion.

BECK, J., files a dissenting opinion.

CERCONE, Judge, concurring.

I join the opinion of my colleague Judge Popovich and write separately merely to emphasize that the trial court correctly recognized that this case is governed by *Kolojeski v. Deisher, Inc.,* 429 Pa. 191, 239 A.2d 329 (1968), wherein the Pennsylvania Supreme Court refused to impose an affirmative duty upon a landlord to inspect rental property for lead based paint contamination in the absence of a statutory requirement to do so. The Philadelphia ordinance applicable instantly imposes

renders the matter waived. Even if, arguendo, we were to find the matter preserved, the appellants would not prevail given that a breach of implied warranty of habitability requires a tenant to prove he or she gave notice to the landlord of a defect or condition, that the landlord had reasonable opportunity to make necessary repairs, and that the landlord failed to do so. See *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979).

Inasmuch as the appellants conceded *not* giving the appellees notice of the peeling paint until *after* the minor-child's illness, the element of *notice,* needed to have a cause of action based on implied warranty of habitability, is missing and with that the assignment of liability to the defendants would be unwarranted. *Id.*

5. We would pose the question to the appellants: "You seem to hold the appellees liable for the ingestion of paint chips by your child on a theory of 'constructive notice,' assuming that the information was so widespread on the dangers of lead-based paint as to place them on notice of the dangers of the paint?" Would not this wealth of information have been just as available to you so as to ask the landlord to inspect the premises for lead-based paint?

We believe that one may not hold a landlord accountable without questioning the knowledge on the part of the tenants of the lead-based paint problem, *if we were to embrace the "constructive notice" argument of the appellants which we are not ready to do at this point in time.*

the duty on a landlord to correct any hazardous condition which has been identified by the Department of Public Health. *See* Philadelphia Municipal Code § 6–403(4)(b). However, the length of time within which the property's owner must act is left to the discretion of the Department. *Id.* § 6–403(b)(b)(.1)(.a). In this case, the trial court found, and appellants concede, that the landlord had no actual knowledge of the lead based paint hazard in the demised premises prior to receiving notice to that effect from the Board of Health. The trial court further determined that defendants/appellees acted in compliance with the Philadelphia ordinance and corrected the lead based paint hazard within thirty days after receiving actual notice of the problem. The question of whether, under these circumstances, the *Kolojeski* rule should be expanded to impose liability for the landlord's alleged "constructive knowledge" of the hazardous condition must be left to our Supreme Court for resolution.

BECK, Judge, dissenting.

I dissent.

In *Kolojeski v. John Deisher, Inc.*, 429 Pa. 191, 239 A.2d 329 (1968), the supreme court decided that a landlord could not be held liable for his tenant's lead paint induced injuries, where the landlord had no prior actual or constructive notice of the dangerous condition. In doing so, the court stated that "[w]ere we to conclude otherwise, we would be required to ascribe to [the defendant-lessors] a knowledge and expertise not ascribable, *at least at the time of this incident,* to people without special training or experience." 429 Pa. at 195, 239 A.2d at 330–31 (emphasis added).

The Kolojeskis' child died from lead paint poisoning almost thirty years ago, in 1966. *Id.* at 193, 239 A.2d at 330. The *Kolojeski* court left the door open for the possibility that, at some point in the future, the knowledge of the dangers of lead paint poisoning indeed would be "ascribable ... to people without special training and experience." *Id.* at 195, 239 A.2d at 331.

The trial court, although constrained by the holding in *Kolojeski*, obviously thought that this issue should be revisited:

> [S]ince the 1968 decision the whole world has become aware of the dangers of lead paint as a matter of common knowledge and the courts can't say we don't know anything about that, especially a judge sitting in code enforcement court knowing that you can close down a place for lead paint violations.

R. 123a. After granting summary judgment against the plaintiffs, the trial judge frankly urged them to file an appeal so that an appellate court would have the opportunity to review the matter. R. 134a.

The lessor in this case purchased the subject property in 1964. Shakeema Felton's grandmother rented the premises in 1986, and the child's exposure to the lead paint on its walls apparently occurred around May 1989. After the lead poisoning was diagnosed, the City of Philadelphia tested the leased premises, and the presence of lead was detected; the lead paint then was removed.

The parties have conceded that the defendant-lessor did not have actual notice of the presence of lead-based paint on the property. However, even the *Kolojeski* court, in 1968, could take judicial notice "that the use of such paint is common and widespread." *Id.* at 195, 239 A.2d at 331. Moreover, as early as 1966, the City of Philadelphia had recognized the dangers of lead based paint. Philadelphia Code § 6–403. The current ordinance provides that:

> No person shall permit lead based coating to remain on any toy, furniture, food utensil, household product or the exterior or interior surfaces, fixtures or appurtenances of any dwelling, rooming house, dwelling unit, rooming unit, institution or similar type facility where the surface may be readily accessible to children under the age of six years and where the Department [of Public Health] determines that the presence of lead based coating creates a health hazard to children under the age of six.

Philadelphia Code § 6–403(2)(d) (as amended 1977).[1] The same ordinance provides a procedure through which the "Department of Public Health, upon application by any owner or person in control of a premises, shall test or cause to be tested said premises to determine the presence of lead based coating." § 6–403(4)(a). The existence of a similar ordinance previously has led to a finding that the defendant lessor "should have known that the paint on the walls of [plaintiff's] apartment contained lead which might be harmful to the occupants of the apartment." *Acosta v. Irdank Realty Corp.*, 38 Misc.2d 859, 238 N.Y.S.2d 713, 714 (1963).

In addition, by 1970, the Federal government had enacted the Lead–Based Paint Poisoning Prevention Act (42 U.S.C. § 4821 *et seq.*). At least part of the Act's purpose was to increase public awareness of the dangers of lead paint poisoning. Senate Report No. 91–1432, U.S.Code Cong. & Admin.News p. 6130 (December 17, 30, 1970).[2]

I believe that by the time the incidents in this action took place, the defendant-lessor had reason to know of the existence and dangers of lead-based paint in residential spaces, especially where there are young children present. Section

1. The majority make much of the fact that this code section, though apparently enacted in 1966, was not discussed in the *Kolojeski* decision. However, we note that the current language of § 6–403(2)(d) was not passed until 1977. The relevant code section, as enacted on March 11, 1966, read only as follows:

(2) Prohibited Conduct.

(a) No person shall apply lead paint to toys, furniture or the interior surfaces of any dwelling, rooming house, dwelling unit, rooming unit or facility occupied or used by children.

(b) No persons shall sell, transfer or deliver toys or furniture to which lead paint has been applied.

Philadelphia Code § 6–403(2). It may well be that the code section was inapplicable to the facts in *Kolojeski*, or even that the ordinance was too new to be considered by the court.

Nonetheless, the issue is not whether the lessor should be held liable for a violation of the ordinance, but that its existence shows that the lessor should have known that the presence of lead was dangerous, and therefore prohibited by law.

2. Although the Act was aimed at federally-funded housing, its enactment indicates that the problems associated with lead-based paint poisoning were widespread and required national and local attention.

358 of the Restatement (Second) of Torts, provides in pertinent part:

(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

(a) the lessee does not know or have reason to know of the condition or the risk involved, and

(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

Restatement (Second) of Torts § 358(1). The comment to § 358 explains that constructive knowledge of a dangerous condition should be imputed to the lessor when "he has information from which a person of reasonable intelligence, or of his own superior intelligence, would infer that the condition exists ... and in addition would realize that its existence will involve an unreasonable risk of physical harm." § 358 comment b. "It is enough that [the defendant] had reason to know." *Id.*

The increased general awareness of the dangers of lead paint poisoning gives rise to a certain duty on the part of a lessor. The need to impose such a duty is even more compelling when we consider the foreseeability of injury to young children when lead paint chips are accessible. *See Norwood v. Lazarus,* 634 S.W.2d 584, 587 (Mo.App.1982) ("It is well known that children of tender years have a proclivity to put anything they can get into their hands into their mouths."); *Acosta v. Irdank Realty Corp.,* 38 Misc.2d at 860, 238 N.Y.S.2d at 714 ("That small children go around the house picking up

everything within their reach and placing it in their mouths and attempting to eat it is well known.").[3]

It is not unreasonable to expect that by 1989, when Shakeema Felton was injured by the lead-based paint in the appellee's property, a lessor should have been sufficiently aware of the existence and dangers of lead-based paint to *at least have the premises tested.* Furthermore, in the event that reasonable testing efforts are made, and lead paint is discovered, the condition should be abated. I believe that a landlord, who rents property for profit, owes the duty of testing and abatement to his or her tenants.

The majority presumes that imputing this awareness to landlords automatically leads to strict liability of defendant-lessors whenever lead paint-related injuries occur. I disagree. Defendant-lessors should be permitted to proffer evidence that they caused the subject premises to be tested for lead-based paint after they came into possession, and corrected any defects discovered. If, at that time, the property was pronounced to be lead-free, evidence to that effect also would be probative. In addition, the lessor could prove that where lead paint once was removed, all subsequent coats of paint had no more than the legally permissible levels of lead.

Finally, the majority makes the point that, in the event that a lessor is held to have constructive knowledge of the existence and dangers of lead paint, the tenant also must be held to have such knowledge. Majority Opinion at 488. I do not think that a lessee of residential premises should be held to the same standard as a landlord, who essentially is in the

3. This reasoning is not unlike that behind the "attractive nuisance" doctrine, which provides that a possessor of land is liable for "bodily harm to trespassing children of tender years caused by a structure or other artificial condition" maintained on the land, which the possessor knows or should know that children, "because of their natural impulses and instincts," are "likely to trespass upon without discovering the condition or realizing the risk involved," and where the utility of maintaining the condition is slight compared with the risk to the children. *Krepcho v. Erie,* 145 Pa.Super. 417, 420, 21 A.2d 461 (1941). *See also* Restatement (Second) of Torts § 339, "Artificial Conditions Highly Dangerous to Trespassing Children" (1965) (requiring also that possessor of land exercise reasonable care to eliminate the danger or otherwise protect the children); *Jesko v. Turk,* 421 Pa. 434, 219 A.2d 591 (1966) (adopting Restatement § 339).

property rental business. The lessor usually has more control over the risk-creating defect than does the lessee, and if this is not so in a particular case, the lessor may defend on such grounds. Although some measure of comparative negligence may be applicable under certain circumstances, it is my opinion that a lessee should be entitled to assume that a lessor, by this point in time, would have discovered and abated any lead-related defects that may have existed on the property.[4] Where, as in this case, a child has been injured by the consumption of lead paint chips which have been allowed by the lessor to remain on the property, a presumption of negligence should arise, and that presumption may be rebutted by evidence of the defendant-lessor's reasonable efforts to discover and abate the dangerous condition.

I would reverse the grant of summary judgment, and require the defendant-lessor to put on proof of any reasonable effort made to discover and abate the lead-paint related defect.

---

4. Professor Keeton has described a growing "[d]iscontent with the appearance of unfairness in the landlord's general immunity from tort liability," and an increasing willingness by some courts to impose on the lessor a general tort duty of reasonable care. *Prosser and Keeton on The Law of Torts* § 63, p. 446 (5th Ed.1984).