**The REFORMED CHURCH OF the ASCENSION and Reverend Dwayne Mosier and Reverend Debra Mosier and Reverend Dwayne Mosier and Reverend Debra Mosier as Parents and Guardians of Hannah Abigail Mosier, A Minor, Phoebe Mosier, A Minor, and Sophia Mosier, A Minor, Appellants,**

v.

**THEODORE HOOVEN & SONS, INC., and Theodore Hooven & Sons, Inc., Siding & Roofing, Inc., and Theodore Hooven a/k/a Ted Hooven, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 18, 2000.
Filed Dec. 22, 2000.

William J. Brennan, King of Prussia, for appellants.

Gary R. Block, West Chester, for appellee.

Before McEWEN, President Judge, TODD and MONTEMURO *, JJ.

* Retired Justice assigned to Superior Court.

MONTEMURO, J.:

¶ 1 Appellants, the Reformed Church of the Ascension, Richard Dwayne Mosier, and the Reverend Debra Mosier, both individually and as the parents and guardians of Hannah–Abigail Mosier, Phoebe Mosier, and Sophia Mosier, appeal from an order of the Court of Common Pleas of Montgomery County which dismissed their complaint after granting the preliminary objections of Appellees, Theodore Hooven Sons, Inc., Theodore Hooven and Sons Siding and Roofing, Inc., and Theodore Hooven (a/k/a/ Ted Hooven), contractors specializing in exterior and interior painting and renovation of institutional facilities. Because we find that Appellants did not state a viable claim for breach of contract, but did state a viable claim for negligence, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

¶ 2 Appellant–Church and Appellees entered into a contract whereby Appellees were to repaint portions of a parsonage owned by Appellant–Church and resided in by Appellants, the Mosier family. Appellants claim that chips and dust from lead paint, produced by Appellees in the course of performing its duties under the contract, contaminated the interior and exterior of the parsonage causing property damage and personal injury. However, Appellants do not claim that Appellees were on notice of the existence of lead paint prior to commencing work. The contract did not indicate that the parsonage was previously painted with lead paint, nor did it state that Appellees were to abate the premises of lead paint.

¶ 3 Appellants' complaint included two counts of breach of contract, three counts of negligence, and one count of negligent misrepresentation. Based upon Appellees' preliminary objections in the nature of a demurrer, the trial court dismissed all

counts of the complaint. This appeal now follows.

¶ 4 The applicable standard of appellate review for the granting of preliminary objections in the nature of a demurrer is that:

[w]hen preliminary objections in the nature of a demurrer are filed, we must accept as true all the well-pleaded material facts set forth in the complaint and all reasonable inferences deducible from those facts. Accepting these facts and inferences, we then determine whether the pleader has failed to state a claim for which relief may be granted, and we will affirm the grant of a demurrer only if there is certainty that no recovery is possible. All doubts are resolved in favor of the pleader. Furthermore, by filing preliminary objections in the nature of a demurrer, appellees have admitted the factual allegations of the complaint for purposes of the demurrer.

*Wolfe v. Porter*, 405 Pa.Super. 385, 592 A.2d 716, 717 (1991), *appeal denied*, 530 Pa. 646, 607 A.2d 256 (1992).

¶ 5 Appellants first argue that they have set forth a viable claim for breach of contract despite the absence of any specific reference to lead paint removal in the contract.

¶ 6 "A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *CoreStates Bank N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.1999). The policy behind contract law is to protect the parties' expectation interests by putting the aggrieved party in as good a position as he would have been had the contract been performed. *See* Restatement (Second) of Contracts § 344(a) (1979). This section of the Restatement was approved by the Pennsylvania Supreme Court in *Trosky v. Civil Service Commission*, 539 Pa. 356, 652 A.2d 813, 817 (1995).

¶ 7 Absent from the express terms of the contract in the instant case is any language creating a duty for Appellees to abate the lead paint in the parsonage. The abatement of lead paint was therefore not an expectation of either party to the contract. The contract merely stated Appellants' expectation that they would pay approximately $25,000, and in return Appellees would repaint portions of the parsonage. To charge Appellees with the abatement of the lead paint and the damages caused by the lead paint chips and dust would, in contravention of contract law, place Appellants in a much better position than their original expectations.

¶ 8 This finding, however, does not end our inquiry into whether Appellees are liable for the Appellants' property damage and personal injury. "A party to a contract has two duties: a contractual duty and a legal duty to act without negligence towards both the other party to the contract and third parties." *Weiser v. Bethlehem Steel Corp.*, 353 Pa.Super. 10, 508 A.2d 1241, 1245 (1986). The policy behind the law of torts is to put an injured person in a position as near as possible to his position prior to the tort. *Trosky, supra* at 813 (citing Restatement (Second) of Torts § 901 cmt. a (1977)).

¶ 9 Appellants also argue that they pled a *prima facie* case for negligence by alleging that Appellees improperly burned, chipped, sanded and removed lead paint and failed to seal the doorways, windows and walkways in connection with the painting services performed. Because Appellees are independent contractors, hired to paint the parsonage, we agree.

¶ 10 To establish a cause of action for the tort of negligence, the pleader must aver in his complaint the following elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure on the person's part to conform to the standard required; (3) a

breach of the duty; (4) a reasonably close causal connection between the conduct and the resulting injury; (5) actual loss or damage resulting to the interest of another. *Filter v. McCabe,* 733 A.2d 1274, 1276 (Pa.Super.1999), *appeal denied,* 563 Pa. 645, 758 A.2d 1200 (2000).

¶ 11 "Under Pennsylvania law, one who constructs a building or creates a condition on behalf of the possessor of land has the same liability as a possessor of land for the physical harm caused to others by the dangerous character of the building or condition while it is in his control." *Weiser, supra* at 1245 (citing Restatement (Second) of Torts § 384 (1977)). In creating temporary conditions, a contractor has a duty to use reasonable care to create those conditions safely for those whom the contractor has reason to know may be affected. *See Szumski v. Lehman Homes, Inc.,* 267 Pa.Super. 478, 406 A.2d 1142, 1144 (1979).

¶ 12 A home remodeling contractor is negligent when, in the course of remodeling, the contractor uses his/her judgment as to the safety of a procedure and the house is damaged due to that procedure. *Blanchard v. Wilt,* 403 Pa. 380, 169 A.2d 541, 543 (1961). The defendant in *Blanchard,* a general contractor, loaned a heater to his plumber for an evening while the plumber was working on the plaintiff's home. *Id.* at 542. The heater was improperly placed too close to the joists and the flooring, causing the house to catch fire. *Id.* At trial, the defendant testified that he had approved of the safety of the heater's placement. *Id.* at 543. In reversing a judgment of nonsuit for the defendant, the Supreme Court of Pennsylvania ruled that it was "for the jury to say whether [defendant's] judgment was good or bad and whether having once evaluated the safety of the [heater], it was his duty to do so again." *Id.*

¶ 13 According to the complaint in the instant case, Appellees were contracted by Appellant Church to paint portions of the parsonage. In performing the duties set forth in the contract, Appellees released lead paint chips and dust into the air. Appellees were aware that Appellants would be affected by the chipped and sanded paint. Therefore, it is for the jury to assess Appellees' judgment as to the chosen method of chipping and sanding the old paint.

¶ 14 Appellees argue that they owed no common law duty of care to Appellants because Appellees were not on actual notice of the existing lead paint. Relying on this Court's opinion in *Felton v. Spratley,* 433 Pa.Super. 474, 640 A.2d 1358 (1994), *appeal dismissed as improvidently granted,* 542 Pa. 361, 667 A.2d 214 (1995), Appellees contend that they should be treated similarly to landlords in their obligations regarding lead paint. Because of the differences in the traditional common law duties of landlords and independent contractors, however, we do not find Appellees' argument persuasive.

¶ 15 In *Felton,* we ruled that a landlord was not liable for the injuries caused to a minor tenant by ingestion of lead paint. The authority relied upon in *Felton* was the well-settled rule concerning the general liability of a landlord to his tenant for injuries received by a tenant on the premises:

in the absence of any provision in the lease, a landlord is under no obligation to repair the leased premises, to see to it that they are fit for rental or to keep the premises in repair ...; a tenant takes the premises as he finds them and the landlord is not liable for existing defects of which the tenant knows or can ascertain by a reasonable inspection ...; a landlord out of possession, however, may be liable where he conceals a dangerous condition of which he has knowledge and [the tenant has no knowledge or] cannot be expected to discover ...

*Id.* at 1361 (quoting *Lopez v. Gukenback,* 391 Pa. 359, 137 A.2d 771, 774–75 (1958)); *see also Kolojeski v. John Deisher, Inc.,* 429 Pa. 191, 239 A.2d 329, 330 (1968).

Because the evidence in *Felton* established that the landlord had no notice of the lead paint or the chipping and peeling of paint prior to the child's illness, we affirmed an order of summary judgment for the defendant. *Felton, supra* at 1361–65.

 ¶ 16 Although landlord/tenant and painter/homeowner relationships are controlled by the lease or contract, the duties outside those agreements are determined by common law. Whereas the courts have severely limited the duties owed by landlords to their tenants, painters, as contractors, owe a legal duty not to injure others by creating dangerous conditions in performing their services. *Szumski, supra.* To determine the specific duties of house painters, we find an analysis recently set forth by the Appeals Court of Massachusetts to be persuasive:

> In the paint trade, scraping and sanding away old paint—which commonly contains lead—is *de rigueur.* The possibility that chips and dust may contaminate the surroundings is clearly a normal, foreseeable, and expected incident of doing business. This risk can and should be reduced to manageable proportions by prophylactic measures (such as drop cloths and closed windows and doors) and careful cleanup ...

*Dorchester Mutual Fire Insurance Co. v. First Kostas Corporation, Inc.,* 49 Mass. App.Ct. 651, 731 N.E.2d 569, 572 (2000). Adopting this analysis, we hold that Appellants' complaint stated a claim for negligence, and the trial court erred by granting Appellees' preliminary objections. If, in fact, the jury finds that Appellees improperly scraped and sanded the old paint, failing to reduce the common hazard of lead contamination and thus creating a dangerous condition, they breached their duty as contractors and may be found liable in negligence.

¶ 17 Therefore, we affirm the trial court in granting the demurrer on counts I, II, and VI [1], but we reverse the trial court's dismissal of counts III, IV, and V, and remand the case for proceedings consistent with this Opinion.

¶ 18 Order affirmed in part, reversed in part. Case remanded. Jurisdiction relinquished.

---

1. Count VI of Appellant's complaint claims a cause of action for negligent misrepresentation. Although the Appellants mention in their brief that the trial court erred in dismissing this claim, they do not develop their argument beyond two sentences with no citations to authority. Therefore, we will not consider the negligent misrepresentation claim and affirm the trial court's ruling. *See* Pa.R.A.P. 2119(a); *Borough of Mifflinburg v.. Heim,* 705 A.2d 456, 467 (Pa.Super.1997).