# Nutrition Management Service Co. v. New Courtland, Inc.

*Michael G. Louis* and *J. Charles Gerbron, Jr.*, for plaintiff.

*Zachary C. Glaser* and *Edward T. Butkovitz*, for defendants.

GLAZER, *J.*, April 10, 2014—Before the court are two motions for post-trial relief filed respectively by defendants, New Courtland, Inc. and New Courtland Elder

Services, and plaintiff, Nutrition Management Service Company. For the reasons below, the respective motions for post-trial relief are denied.

## Background

Defendants New Courtland, Inc. and New Courtland Elder Services ("New Courtland" or "defendants"), are Pennsylvania entities engaged in the management of skilled nursing facilities. Plaintiff Nutrition Management Services Company ("Nutrition Management" or "plaintiff"), provides contract food and services to various institutions, including skilled nursing facilities in Pennsylvania.

On January 1, 2000, Nutrition Management and New Courtland entered into four identical Food Service Provider Agreements (the "contracts"), whereby Nutrition Management agreed to operate the food service departments at four nursing facilities owned or managed by New Courtland. The four nursing facilities were respectively named Cheltenham York Road Nursing & Rehabilitation Center ("CYR"), Cliveden Convalescent Center ("Cliveden"), Maplewood Manor ("Maplewood"), and Tucker House ("Tucker House").[1] Pursuant to the Contracts, Nutrition Management was required to issue three types of invoices: fixed-costs, variable-costs and adjustment-costs invoices. Under the contracts, the rates charged by Nutrition Management for the fixed-costs and variable-costs invoices were "subject to an annual adjustment," to be mutually agreed-upon by the two respective parties.[2] Unlike the fixed-costs and variable-costs invoices, adjustment-costs invoices required pre-

---

1. Food and services provider agreements, trial exhibits P1-P4.
2. *Id.* Exhibits B to the food service provider agreements.

approval on a case-by-case basis.[3]

Beginning in March 2007, Nutrition Management unilaterally increased the rates for the fixed-costs and variable-costs invoices. Due to a clerical or accounting oversight, Nutrition Management erroneously paid certain unilaterally increased fixed-costs invoices over a period of fourteen months. As a result, New Courtland overpaid Nutrition Management the amount of $44,822.12 under the CYR Contract. However, such overpayments were fully reimbursed to New Courtland by an entity acting on behalf of Medicare.[4]

### I. New Courtland failed to prove damages stemming from its overpayment of the fixed-costs invoices under the CYR contract.

The motion for post trial relief of defendant New Courtland asserts that the court erred when it failed to offset overpayment of certain fixed-costs invoices in the amount of $44,822.12, against any damages awarded to Nutrition Management at the close of trial.[5] In the response in opposition, Nutrition Management asserts that New Courtland is not entitled to offset any overpayment because although New Courtland did overpay $44,822.12, it recovered that entire amount when it received full Medicare reimbursement.[6] New Courtland counters the opposition of Nutrition Management by asserting the following:

[t]here is no basis for denying New Courtland's request

---

3. *Id.*
4. Defendant New Courtland's trial exhibit D-22.
5. Brief in support of the motion for reconsideration of defendant New Courtland, IV-A.
6. Nutrition Management's brief in support of its opposition to the motion for reconsideration of New Courtland, pp. 5-7.

[for the offset]. In the context of a breach of contract claim, the purpose of a damage award is to place the non-breaching party as nearly as possible in the same position it would have occupied had there been no breach.[7]

In Pennsylvania,

[i]n order to recover damages for breach of contract, the party alleging the breach must prove:

(1) the existence of a contract,

(2) a breach of a duty imposed by the contract, and

(3) *damages.*[8]

*The policy behind contract law is to protect the parties' expectation interests by putting the aggrieved party in as good a position as he would have been had the contract been performed.*[9]

In this case, New Courtland mistakenly overpaid Nutrition Management the amount of $44,822.12, representing certain unilaterally increased fixed-costs invoices issued by Nutrition Management under the CYR contract. However, New Courtland's over-payment was subsequently reimbursed in full by an entity acting on behalf of Medicare; consequently, New Courtland was put in as good a position as it would have been if it had paid the CYR fixed-costs invoices at the lower agreed-upon rates,

---

7. Reply brief in further support of defendant New Courtland's motion for post trial relief, p. 3.

8. *Fritz v. Glen Mills Sch.*, 894 A.2d 172,178 (Pa. Commw. 2006) (emphasis supplied).

9. *Reformed Church of Ascension v. Theodore Hooven & Sons, Inc.*, 2000 Pa. Super. 406, 764 A.2d 1106, 1109 (Pa. Super. 2000) (emphasis supplied).

and had been reimbursed by medicare accordingly. New Courtland failed to prove damages and may not recover for overpaying Nutrition Management's unilaterally increased fixed-costs invoices under the CYR contract.

## II. New Courtland did not pay Variable Cost Invoice No. 51422.

The motion for post-trial relief of New Courtland asserts that this court erred in awarding recovery of invoice no. 51422 to Nutrition Management. The motion specifically states that the court erred by "improperly plac[ing] the burden on New Courtland to prove the absence of Nutrition Management's claimed damages."[10] Furthermore, the motion asserts that the court erred by disregarding New Courtland's clear evidence establishing that invoice no. 51422 had been paid.[11] In light of these assertions, this court re-examined the trial records and testimonies, and determined the following:

a) Kathleen A. Hill ("Ms. Hill"), president and chief operating officer of Nutrition Management, testified in the course of trial. On cross-examination, Ms. Hill testified that on many occasions, New Courtland's wire transfer payments were overdue by two or three months. Ms. Hill also stated that owing to the accumulation of overdue invoices, Nutrition Management began to "book ... payments on the oldest invoice first unless we receive [d] from our client [instructions on] how they [were] to be booked."[12] The court found this testimony credible.

---

10. Brief in support of the motion for reconsideration of defendant New Courtland, IV-B.
11. *Id.*
12. Notes of testimony dated 8/5/2013, 172:18-21.

b) Beginning February 28, 2009, Nutrition Management began to issue invoices bearing the following language: *"All payments will be applied to oldest invoice first unless otherwise noted on check."*[13]

c) Invoice no. 51442, issued under the CYR contract, contained the above-quoted language.[14]

d) New Courtland produced internal accounting documentation showing that an amount of $56,610.90 was paid to Nutrition Management. According to the internal documentation, New Courtland's payment of $56,610.90 covered in full two overdue invoices, including CYR invoice No. 51442.[15] However, New Courtland failed to produce any notation on its wire transfer payment or canceled check requiring Nutrition Management to apply a portion of the $56,610.90 toward full satisfaction of invoice no. 51442.

The evidence above convinced this court that Nutrition Management, through the credible testimony of Ms. Hill, met its burden of proof regarding New Courtland's failure to pay invoice no. 51422. The burden thus shifted to New Courtland.[16] Although New Courtland provided internal accounting documentation showing payment of invoice no. 51442, this court did not find such evidence credible. The evidence was not credible because New Courtland "did not clearly demonstrate which portion, if any, of its lump-sum wire transfer had been allocated to the payment

_____

13. Trial exhibit P-15.

14. *Id.,* invoice No. 51442 dated April 30 2010.

15. Trial exhibit D-17.

16. "If the plaintiff makes a prima facie case, and nothing is done by the other side to answer it the plaintiff wins." *Pellegrino Food Products Co., Inc. v. The Valley Voice,* 2005 Pa. Super 191, 875 A.2d 1161, 1168 (Pa. Super. 2005).

of invoice no. 51442."[17] In other words, after the burden of proof shifted to New Courtland, New Courtland failed to convince this court that it had paid invoice no. 51442.

### III. The court properly determined that New Courtland waived the contractual requirements for multiple pre-approvals of adjustment-costs invoices.

According to the post-trial motion of New Courtland, this court erred in finding that Nutrition Management was entitled to receive payments for adjustment-cost invoices without first obtaining written pre-approval from multiple individuals, as required under the terms of the four contracts. New Courtland argues that the court erred because Nutrition Management had failed to meet its burden of proof at trial that New Courtland was obligated to pay such invoices without multiple pre-approvals therefrom.

In Pennsylvania, "[i]f the plaintiff makes a prima facie case, and nothing is done by the other side to answer it the plaintiff wins."[18]

At trial, Nutrition Management did not present documentary evidence showing the manner in which adjustment-cost invoices were approved by New Courtland. However, Nutrition Management credibly testified that the adjustment-costs invoices were "always approved by [a single] administrator ... [and] were never approved by the other folks...."[19] New Courtland rebutted this statement with the testimony of Mr. Andrew Seibert,

17. Findings-of-fact and conclusions-of-law, ¶36, dated December 20, 2013.

18. *Pellegrino Food Products Co., Inc. v. The Valley Voice*, 2005 Pa. Super 191, 875 A.2d 1161, 1168 (Pa. Super. 2005) (citing *Arco Metalscraft Co. v. Shaw*, 70 A.2d 850, 853 (Pa. 1950)).

19. Notes of testimony dated 8/5/2013, p. 40:14-15.

chief financial officer thereof. Mr. Seibert testified that the requirement for multiple pre-approvals was very important to New Courtland as a mechanism to prevent submission by Nutrition Management of "extra invoices."[20] However, Mr. Seibert did not specifically rebut Nutrition Management's assertion that, notwithstanding the clear contractual language requiring multiple pre-approvals, the disputed adjustment-costs invoices were always approved by a single administrator. The credible, un-rebutted testimony of Nutrition Management convinced this court that the parties, in their handling of the adjustment-costs invoices, had been engaging in a course of performance that deviated from the terms of the four contracts. In Pennsylvania,

> Course of performance is a sequence of conduct between the parties subsequent to formation of the contract [which occurs] during performance of the terms of the contract.[21]

> A waiver [to a contractual provision]...may be found in a course of performance. Where there are repeated occasions for performance by one party and the other has knowledge of the nature of the performance and opportunity to object, a course of performance accepted or not objected to may be relevant to show the meaning of the contract, or a *modification* of it, or a *waiver*.[22]

> [A] party by conduct may modify a written agreement without a writing if and when his conduct clearly shows

---

20. Notes of testimony dated 8/6/2013, volume 2, pp. 94:22-25, 95:1-9.

21. *J.W.S. Delavau, Inc. v. E. Am. Transp. & Warehousing, Inc.*, 2002 Pa. Super 336, 810 A.2d 672, 683-84 (Pa. Super. 2002).

22. Restatement (Second) of Contracts § 150 (1981) (emphasis supplied).

an *intent to waive the provision....*[23]

In this case, New Courtland's failure to credibly rebut Nutrition Management's assertion convinced this court that the parties were engaged in a course of performance which waived the contractual requirement for multiple pre-approval for adjustment-costs invoices. Since New Courtland waived the pre-approval requirements, this court properly awarded Nutrition Management the full amounts listed in the adjustment-costs invoices.

### IV. The court properly awarded interest on Nutrition Management's claims.

In its brief in support of the motion for reconsideration, New Courtland argues that Nutrition Management was not entitled to prejudgment interest on several invoices, specifically on variable-costs invoices 51422 and 52559, and adjustment-costs invoices 50249, 52119, 52139, 52260 and 48916.[24] New Courtland argues that Nutrition Management was not entitled to collect interest on the specified invoices because the amounts of interest thereon could not be ascertained until this court issued its findings-of-fact and conclusions-of-law.[25] The court is not convinced by this argument. In the course of trial, Mr. Donald Levesque, vice president of finance of New Courtland, testified as follows:

Q. Were you in court yesterday when Mr. Roberts [of Nutrition Management] testified about his decision to [unilaterally] change the rate in March of 2007?

---

23. *Douglas v. Benson*, 294 Pa. Super. 119, 128,439 A.2d 779, 783 (1982) (emphasis supplied).
24. Brief in support of the motion for reconsideration of New Courtland, P.14.
25. *Id.* PP.4-15

A. Yes.

* * *

Q. How did you respond when the facilities started receiving invoices in March of 2007 at rates you hadn't agreed to?

A. I responded and instructed the accounts payable staff to continue to pay the rates, the last rates that we had agreed upon.[26]

In Pennsylvania,

[P]rejudgment interest...has been defined to be... compensation allowed to the creditor for delay of payment by the debtor, and is said to be impliedly due whenever a liquidated sum of money is unjustly withheld.... [A]s prerequisites to running of prejudgment interest, the debt must have been liquidated with some degree of certainty and the duty to pay it must have become fixed.[27]

In this case, the testimony of Mr. Levesque shows that New Courtland knew how to ascertain the amount of each variable-costs invoice by simply disregarding Nutrition Management's unilaterally increased rates, and by calculating the actual amounts through the use of existing, agreed-upon rates. As to the adjustment-costs invoices, this court has already determined that New Courtland waived the requirement for multiple pre-approvals; consequently, New Courtland could have ascertained the amounts thereof by simply reading the figures submitted by Nutrition

---

26. Notes of testimony dated 8/6/2013, 24:24-25:20.
27. *TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 614 Pa. 549, 39 A.3d 253, 263, 264 (2012).

Management in the adjustment-costs invoices. Since the amounts due to Nutrition Management were ascertainable upon receipt of each invoice, the court properly awarded pre-judgment interest in favor of Nutrition Management.

For the reasons above, the motion for post-trial relief of defendant New Courtland is denied.[28]

## V. The court correctly concluded that interest shall be assessed at the rate of 6% per year on variable-costs and adjustment-costs invoices

According to the motion for post-trial relief of Nutrition Management, this court should have awarded Nutrition Management with interests on unpaid or underpaid invoices at the rate of 1.25% per month (or 15% per year). According to the motion, since the parties had failed to agree upon new rates after the sixth-contract year, the court should have awarded Nutrition Management a "reasonable" rate of 15% per year "under the circumstances," beginning with the seventh-contract year and lasting until termination of each contract.[29] Each contract between Nutrition Management and New Courtland specifically stated:

[Nutrition Management] shall bill [New Courtland] on the first day of each month for fixed costs and last day

28. The motion for post-trial relief of New Courtland asserts that the court should have entered judgment against Nutrition Management on its four alternative claims of unjust enrichment. In Pennsylvania, "theories of breach of contract and unjust enrichment *must* be pleaded alternatively in order to allow recovery under the latter theory where an express contract cannot be proven." *Lugo v. Farmers Pride, Inc.*, 2009 Pa. Super. 967 A.2d 963, 970 (Pa. Super. 2009). In this case, the order of this court dated December 20, 2013 found that the relationship between Nutrition Management and New Courtland was entirely based on the existence of four written contracts; therefore, this court implicitly entered judgment against plaintiff as to its four claims of unjust enrichment.

29. Nutrition management's motion for post-trial relief, ¶ 1(d), p. 2.

of the month for the variable costs each such bill to be payable within thirty (30) days from invoice date. *The fixed cost component will be discounted one and one-quarter percent (1.25%) if paid within five (5) days from the beginning of the month. Failure to pay each such invoice within such forty-five (45) day period shall result in additional charge to [New Courtland] of one and one-half [sic] (1.25%) per month on the unpaid balance of such invoice....*[30]

Pursuant to the language above, this court determined that only the fixed-cost invoices were subject to an additional charge of 1.25% per month, if New Courtland failed to remit payment within forty-five (45) days from the date of billing.[31] In the findings-of-fact and conclusions-of-law dated December 20, 2013, this court found that only variable-costs and adjustment-costs invoices issued by Nutrition Management remained unpaid or underpaid.[32] Since the contractual language above did not extend the assessment of any interest upon variable-costs and adjustment-costs invoices, this court reasonably relied on 41 P.S. § 202, and properly awarded Nutrition Management with interests at the simple statutory rate of 6% on the unpaid and underpaid invoices.

For this reason, the motion for post-trial relief of Nutrition Management is denied.

---

30. Trial exhibits P1-P4 (emphasis supplied).

31. The task of interpreting ... [a] contract is generally performed by a court rather than by a jury....Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). In this case, the portion of the contractual language providing for a rate of interest of 1.25% per month is clear and unambiguous and that language extends interest of 1.25% per month only to fixed-costs invoices.

32. Findings-of-fact and conclusions-of-law, ¶45.

## ORDER

And now, this 10th day of April, 2014, upon consideration of the motions for post-trial relief of plaintiff Nutrition Management Service Company and defendants New Courtland, Inc. and New Courtland Elder Services, the respective briefs in support and opposition thereto, defendants' reply brief in further support of their motion for post-trial relief, and the evidence of record, it is ordered that both motions are denied.[1]

Defendants New Courtland, Inc. and New Courtland Elder Services shall satisfy judgment as entered by this court on December 20, 2013, in the amounts listed in plaintiffs "Interest Calculations," which were stipulated by the parties and were filed with this court on January 21, 2014. To such amounts, defendants shall add interest accrued, at the simple rate of 6% per day, beginning from January 22, 2014 and ending at the time judgment is satisfied.

---

1. On December 20, 2013, this court entered an order granting judgment in favor of plaintiff on its breach-of-contract claim. In doing so, the court implicitly entered judgment against plaintiff as to its claims of unjust enrichment because such claims were available to plaintiff exclusively as alternatives to the claim of breach-of-contract. In Pennsylvania, "theories of breach of contract and unjust enrichment *must* be pleaded alternatively in order to allow recovery under the latter theory where an express contract cannot be proven." *Lugo v. Farmers Pride, Inc.*, 2009 Pa. Super. 967 A.2d 963, 970 (Pa. Super. 2009).