J-A29034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MIRA CUNIC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS DOUGLASS | : | No. 884 WDA 2024 |

Appeal from the Order Entered July 1, 2024
In the Court of Common Pleas of Indiana County Civil Division at No(s):
10810 CD 2021

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JUNE 26, 2025**

Appellant, Mira Cunic ("Cunic"), appeals from the July 1, 2024 order, which granted summary judgment in favor of Appellee, Thomas Douglass ("Douglass"), in this negligence action.  We affirm.

**Background**

The trial court summarized the pertinent facts in this matter:

Douglass is the owner of property located at 371 S. 6th Street, Indiana, PA 15701 ("Leased Premises" or "Property").  Douglass had leased the Property for the Fall 2019/Spring 2020 [Indiana University of Pennsylvania] school year to two tenants, namely, Sarah Kelly and Reghan Smith.  In January of 2020, Cunic assumed the lease obligations of Reghan Smith and moved into the Property with her friend Sarah Kelly.  The Property is described as a duplex-type home with two floors and a basement.  The main floor of the Property consists of a living room and a staircase that provides access to the second floor.  On the second floor was Cunic's bedroom, Kelly's bedroom, and a bathroom.  At the time of signing the lease, Cunic was not made aware of any issues with the home[,] and it was her understanding that she was renting the house "as is."  After taking occupancy, Cunic would utilize the

staircase daily and never had any issues with the steps. Prior to March 27, 2020, Cunic never notified Douglass as to any issues with the Property, nor had she had any issues with the Property. However, on March 27, 2020, Cunic was preparing to leave to head to the gym, wearing gym clothes and sneakers. As she was walking down the staircase from the second floor to the living room area, she fell. Cunic described the fall as follows: "Well, I was on my way to the gym, but I never went to the gym. I was going down the steps and like the carpet of the steps isn't secure into the steps. And when I fell, it's because I slipped because the carpet like jerked up because it wasn't connected[,] and I slipped during that process." As a result of the fall, Cunic suffered a broken tibia and fibula, requiring her to undergo four (4) surgeries. She still suffers from pain and scaring [*sic*]. Cunic was alone when she fell. As such, there were no witnesses to the fall, and the only evidence as to the fall comes from Cunic herself.

Trial Court Opinion & Order ("TCOO"), 7/1/24, at 2-3 (cleaned up).

**Procedural History**

On June 4, 2021, Cunic filed a complaint against Douglass, asserting one count of negligence. *Id.* at 1. In her complaint, Cunic claimed, *inter alia*, that Douglass failed to

properly maintain the carpet covering the staircase leading from the first floor to the second floor of the [Leased] Premises[,] such that the carpet became loose and had the potential to slide across the surface of the stairs underneath when stepped on, which created a slipping and/or tripping hazard and constituted an unreasonably dangerous condition.

Complaint, 6/4/21, at ¶ 5. She further averred that the railing alongside the staircase "was loose and not continuous"; the staircase did not consist of uniform tread depths; Douglass "had actual and/or constructive knowledge of the[se] dangerous conditions"; and Douglass failed "to properly and adequately warn individuals of the dangerous and hazardous conditions of the stairway." *Id.* at ¶¶ 6-8, 15(g). Cunic stated that, on March 27, 2020, she

- 2 -

"was walking down the staircase … when the carpet beneath her shoes slipped against the surface of the stairs below and caused her to lose her balance, causing her to fall down the stairs and strike her body on the ground." *Id.* at ¶¶ 9-10. According to Cunic, she sustained "losses, injuries, and damages" as a "direct and proximate result" of Douglass' negligence. *Id.* at ¶ 15.

On August 3, 2021, Douglass filed an answer and new matter, in which he specifically denied being negligent or careless in any way and raised numerous affirmative defenses. *See* Answer to Complaint and New Matter, 8/3/21, at 2-4. On September 20, 2021, Cunic filed a reply to the new matter. The parties subsequently engaged in discovery, which included taking depositions of Cunic, Douglass, and Douglass' wife, Tari Douglass ("Tari").

On March 26, 2024, Douglass filed a motion for summary judgment, asserting that no genuine issue of material fact existed and claiming that he is entitled to judgment as a matter of law. *See* Motion for Summary Judgment, 3/26/24, at 1, 3-4 (unnumbered). Essentially, he argued that, as an out-of-possession landlord, he did not owe a duty of care to Cunic and, therefore, Cunic cannot establish a *prima facie* case of negligence against him. *See* Brief in Support of Motion for Summary Judgment, 3/26/24, at 2-6. Cunic filed a responsive brief, in which she maintained that Douglass is liable for her injuries because he "knew or should have known that the ripples in the carpet of the steps constituted a dangerous condition and did not disclose the same to [her.]" Cunic's Brief in Response to Motion for Summary Judgment, 4/5/24,

- 3 -

at 4 (unnumbered; emphasis omitted). Oral argument was held on June 18, 2024.

By an opinion and order dated July 1, 2024, and filed on the same day, the trial court granted summary judgment in favor of Douglass. ***See generally*** TCOO.

In support of its decision, the trial court explained that, "under Pennsylvania law, a landlord out of possession is generally not responsible for injuries suffered on the leased premises." ***Id.*** at 4 (citing ***Kobylinski v. Hipps***, 519 A.2d 488 (Pa. Super. 1986); ***Henze v. Texaco, Inc.***, 508 A.2d 1200 (Pa. Super. 1986)). It acknowledged, however, that Pennsylvania case law recognizes several exceptions to this general rule of nonliability. ***Id.*** at 5-6 (citations omitted). The trial court determined that, in her attempt to impose liability on Douglass, Cunic relies on one of these exceptions — namely, that an out-of-possession landlord may incur liability if he has knowledge of a dangerous condition on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee. ***Id.*** at 5 (citations omitted).

Additionally, the trial court deemed relevant Section 358 of the Restatement (Second) of Torts, which provides:

[§ 358 ]Undisclosed Dangerous Conditions Known to Lessor

(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical

- 4 -

harm caused by the condition after the lessee has taken possession, if

> (a) the lessee does not know or have reason to know of the condition or the risk involved, and

> (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

(2) If the lessor actively conceals the condition, the liability stated in Subsection (1) continues until the lessee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise[,] the liability continues only until the lessee has had reasonable opportunity to discover the condition and to take such precautions.

*Id.* at 6 (quoting Restatement (Second) of Torts § 358 (1965)).

Taking into consideration the evidence presented by both parties, including the deposition testimony of Cunic, Douglass, and Tari, the trial court made the following findings of fact:

Douglass purchased the [P]roperty approximately fifteen years ago and began renting it shortly thereafter. During the lease, Cunic and her roommate had exclusive access to the [Property]. The [Leased P]remises [ha]s all hard[w]ood floors with the exception of the carpet on the stairs. Cunic moved into the [Property] in January of 2020. As to the period between January 2020 and the accident date[,] when asked how often she used the steps[,] Cunic stated "I never had an issue. How often[? W]ell, every day, because I had to take them to go to my room and bathroom." Prior to the incident, Cunic did not notify the landlord as to any issues with the home. Additionally, Cunic did not request the landlord make any repairs, nor notify the landlord of any defects. Prior to the incident, Douglass had not noticed any issues with the steps[,] nor had he modified the steps in any manner. During Cunic's tenancy, neither Cunic [n]or her roommate ever reported any issue with the stairs or handrailing. In fact, Douglass testified that no tenant has ever reported and [*sic*] issue with the stairs or handrailing. The [P]roperty is

- 5 -

inspected every three years by the Indiana Borough code enforcement officer and passed inspections.

*Id.* at 7 (citations to record omitted).

Based on the foregoing, the trial court opined:

While Douglass owned the Property, he did not maintain any control of the interior area where the steps are located. There is no provision in the lease which requires Douglass to repair the Property. There is no evidence that Douglass had any prior knowledge of the alleged defects in the stairs/carpet. There is no evidence of any concealment of any condition by Douglass, the carpet was not hidden and the stairs, *i.e.*, the carpet, were traversed daily by Cunic and her roommate without incident. In fact, the carpet on the stairs is the only carpet in the entire home[, m]aking the carpet clearly visible and observable to the occupants. Cunic never had any prior issues with the stairs and she never made any complaint about the carpet or the steps to the landlord. Assuming *arguendo* that Douglass had some notice of the rippled carpet and a requirement to provide notice, this court finds that Douglass had every reason to believe that Cunic would discover the condition. What amounts to notice or constructive notice of a defect or dangerous condition existing upon a defendant's premises varies under the conditions of each case. Among the factors affecting the question are the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which [the] defendant, as a reasonably prudent person, had to remedy it. ***See Bremer v. W.W. Smith***, … 191 A. 395 (Pa. Super. 1937). In her two months of use prior to the accident, Cunic utilized the stairs and walked on the carpet daily without incident. She had a clear opportunity to observe, appreciate and discover the condition of the stairs and carpet.

While this court is mindful of the significant injuries sustained by [Cunic], the court must follow the law of the Commonwealth of Pennsylvania. The mere happening of an accident does not charge a defendant with liability[. I]t is for the plaintiff to prove some specific default[] or, at least, an inference of negligence as an indispensable basis of recovery. ***Hartigan v. Clark***, 165 A.2d 647 (Pa. 1960). The court finds that[,] while viewing that [*sic*] facts in the light most favorable to [Cunic,] [Cunic] has failed to present evidence to meet an exception to the general rule that a landlord

out of possession is not responsible for injuries suffered on a leased premises.

*Id.* at 7-9 (cleaned up).

On July 15, 2024, Cunic filed a notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. By order dated August 2, 2024, the trial court adopted its July 1, 2024 opinion and order as its Rule 1925(a) opinion.

### Issues

On appeal, Cunic presents the following questions for our review:

I.    Whether the trial court erred as a matter of law in its interpretation of the Restatement (Second) of Torts § 358 entitled "Undisclosed Dangerous Conditions Known to Lessor" and Pennsylvania law by holding that a landlord must actively hide or conceal a known dangerous condition to trigger liability to a lessee for injuries sustained by the lessee on the leased premises when Section 358 and its comments state that a failure to disclosed [*sic*] the dangerous condition to the lessee is sufficient to trigger liability[?]

II.   Whether the trial court failed to view the evidence of record in a light most favorable to [Cunic?]

Cunic's Brief at 2.[1]

### Discussion

_____

[1] In support of Cunic's appeal, the Pennsylvania Association for Justice ("PAJ") — a self-described nonprofit organization which "promote[s] the rights of individual citizens by advocating [for] the right to trial by jury, full and just compensation for innocent victims, and the maintenance of a free and independent judiciary" — filed an *amicus curiae* brief, largely reiterating Cunic's arguments. **See** *Amicus Curiae* Brief, 8/26/24, at 1, 3-4, 6-15; **see also** Pa.R.A.P. 531 (permitting a non-party interested in the questions involved in a matter pending in appellate court to file an *amicus curiae* brief).

We begin with our standard of review:

[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment,

we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of a cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Petrina v. Allied Glove Corp.*, 46 A.3d 795, 797-98 (Pa. Super. 2012)

(quoting *Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa. Super.

2006) (internal citations and quotation marks omitted)).

Additionally, we recognize that:

> In a typical injury case, the plaintiff must prove all of the following elements of negligence: (1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred.

*Grove v. Port Auth. of Allegheny County*, 218 A.3d 877, 889 (Pa. 2019)

(citation omitted). "It is a fundamental principle of tort law that there cannot

be a valid claim sounding in negligence unless there is a duty upon the

defendant in favor of the plaintiff which has been breached." *Straw v. Fair*,

187 A.3d 966, 983 (Pa. Super. 2018) (internal brackets and citation omitted).

"The existence of a duty is a question of law for the court to decide." *Id.*

(citation omitted).

It is also well-established that:

> In Pennsylvania, a landlord out of possession, in most instances, is not responsible for injuries suffered by third parties on the leased premises. However, … this rule is subject to several exceptions.
>
> > A landlord out of possession may incur liability (1) if he has reserved control over a defective portion of the demised premises; (2) if the demised premises are so dangerously constructed that the premises are a nuisance *per se*; (3) **if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee**; (4) if the landlord leases the property for a purpose involving the admission of the public

- 9 -

and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee; (5) if the lessor undertakes to repair the demised premises and negligently makes the repairs; or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises.

*Dorsey v. Cont'l Assoc.*, 591 A.2d 716, 718-19 (Pa. Super. 1991) (emphasis added; internal citations omitted).

Our Supreme Cout has elaborated on exception number three, which is relevant in the case *sub judice*, stating:

A landlord out of possession is liable for resulting injuries if, when he leases premises, he conceals an existing dangerous condition on the land which he has reason to believe the tenant will not discover. The liability of … the landlords, therefore, is limited to hidden or concealed defects…. The general rule is that the landlord who is entirely out of possession and control is not liable for bodily harm caused to the tenant and those upon the leased premises in the latter's right by reason of any dangerous condition existing when the tenant took possession. In other words, such a landlord owes no duty to persons coming upon the premises for conditions present at the time of the tenant's entrance. To this rigid rule of non-liability there are but two exceptions[, the first of which is pertinent here]: (1) when the landlord conceals or fails to disclose dangerous conditions of which he has knowledge and of when the tenant is unaware and cannot be expected to discover…[.]

*Id.* (quoting *Doyle v. Atlantic Refining Co.*, 53 A.2d 68, 71 (Pa. 1947) (internal citations, quotation marks, and emphasis omitted)). Mindful of the foregoing legal principles, we turn to the merits of Cunic's claims.

*First Issue*

In her first issue, Cunic claims that the trial court erred as a matter of law, "by holding that a landlord **must actively hide or conceal** a known

- 10 -

dangerous condition to trigger liability to a lessee for injuries sustained by the lessee on the leased premises…." Cunic's Brief at 12 (emphasis added). Cunic contends that the trial court interpreted our Supreme Court's declaration that the liability of out-of-possession landlords "is limited to hidden or concealed defects[,]" ***see Doyle***, 53 A.2d at 71, to mean that

> **a landlord must take affirmative steps to hide or conceal a defect for the exception at issue to apply** as opposed to the situation where a landlord fails to notify the tenant of a defect and associated risk that the landlord believes the tenant would not otherwise observe and appreciate.

***Id.*** at 14 (emphasis added). She avers, however, that "such a narrow interpretation is not and never has been the law in Pennsylvania." ***Id.***; ***see also id.*** at 14-15 (citing ***Hayden v. Second Nat'l Bank of Allentown***, 199 A. 218, 219 (Pa. 1938) (noting two exceptions to the general nonliability rule for out-of-possession landlords, the first being "when the landlord conceals **or fails to disclose** dangerous conditions of which he has knowledge and of which the tenant is unaware and cannot be expected to discover") (emphasis added by Cunic)). This claim is belied by the record.[2]

Nowhere in its opinion does the trial court state that active concealment of a dangerous condition is required to trigger liability of an out-of-possession landlord. ***See generally*** TCOO. Rather, the trial court simply determined

_____

[2] The PAJ reiterates Cunic's argument that the trial court erred in determining that active concealment of the dangerous condition is required to satisfy the third exception to the general rule of nonliability for out-of-possession landlords. ***See*** *Amicus Curiae* Brief at 3-15. For the same reasons as set forth *infra* regarding Cunic's claim, we deem this argument meritless.

that "[t]here is no evidence of any concealment of any condition by Douglass[.]" *Id.* at 8. Moreover, its decision to grant summary judgment in favor of Douglass was not based on the lack of evidence of concealment alone. The trial court also concluded that Douglass had **no prior knowledge** of the alleged defects and that, even if "Douglass had some notice of the rippled carpet and a requirement to provide notice, … [he] had every reason to believe that Cunic would discover the condition." *Id. See also Dorsey*, 591 A.2d at 718 (requiring that a lessor has knowledge of a dangerous condition to trigger its duty to disclose the condition to the lessee).

In support of its decision granting Douglass summary judgment, the trial court listed the exceptions to the general rule of nonliability which are recognized by Pennsylvania case law and set forth in *Dorsey*. TCOO at 5-6 (citing, *inter alia*, *Dorsey*, 591 A.2d at 718-19). The trial court expressly declared, "it is the third exception that [Cunic] argues imposes liability on [Douglass]." *Id.* at 6. That exception, as clearly set forth in the trial court's opinion, provides that "a landlord may incur liability … [i]f the lessor has knowledge of a dangerous condition on the demised premises at the time of transferring possession and **fails to disclose** the condition to the lessee[.]" *Id.* at 5 (emphasis added; citation omitted).

Indeed, the trial court added:

> Our Supreme Court has elaborated on this exception as follows: "A landlord out of possession is liable for resulting injuries **if**, when he leases [the] premises, **he conceals** an existing dangerous condition on the land which he has reason to believe the tenant will not discover. The liability of … the landlord[], therefore, is

- 12 -

> limited to hidden or concealed defects…[.]" ***Dorsey***, [591 A.2d at 719 (quoting ***Doyle***, 53 A.2d at 71)].

***Id.*** at 6 (emphasis added; internal brackets omitted). However, this statement by our Supreme Court does not provide that liability results **only** where the lessor conceals an existing dangerous condition; rather, it simply states that a landlord may be liable **if** he conceals the dangerous condition. ***See Doyle***, 53 A.2d at 71.

Based on the foregoing, we discern that the trial court consistently explained throughout its opinion that an out-of-possession landlord may be subject to liability **if he has knowledge** of a dangerous condition on the premises at the time of transferring possession **and conceals or fails to disclose** that condition to the lessee, and that it granted summary judgment in favor of Douglass accordingly. ***See Dorsey***, ***supra***; ***see also*** Douglass' Brief at 13 (agreeing that "active concealment is not required for liability to attach under the third exception").

Next, Cunic argues that a landlord's "actual knowledge" of a dangerous condition is not required to trigger liability. ***See*** Cunic's Brief at 19. However, her argument pertaining to the knowledge requirement consists solely of the following paragraph:

> Section 358 [of the Restatement (Second) of Torts] does not require actual knowledge of the defect. Section 358(1)(b) states as to the landlord's degree of knowledge that the landlord having "reason to know of the condition" is enough. Similarly, as to appreciation of the risk involved, it is enough if the landlord "should realize the risk involved." If all of the evidence were viewed in a light most favorable to [Cunic,] as the legal standard requires, and Section 358 was correctly interpreted and applied,

there exists a genuine issue of material fact as to whether [Douglass] breached his duty of care to [Cunic].

*Id.*

We deem this argument waived due to Cunic's failure to include this issue in her Statement of Questions Involved and her Rule 1925(b) concise statement of matters complained of on appeal.[3]  **See Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (citations omitted) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived."). **See also** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); **Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 225 (Pa. Super. 2014) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's

_____

[3] The PAJ likewise argues that actual knowledge of a dangerous condition is not necessary to satisfy the exception to the general rule of nonliability for out-of-possession landlords.  **See** Amicus Curiae Brief at 3-15.  The PAJ further advances that "whether the landlord knew or should have known of the existence of the dangerous condition was a matter for the jury to decide." **Id.** at 4.  These contentions are not properly before us for resolution.  **See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternative, Inc.**, 832 A.2d 501, 506 n.2 (Pa. Super. 2003) ("An *amicus curiae* is not a party and cannot raise issues that have not been raised or preserved by the parties.") (quoting **Commonwealth v. Tharp**, 754 A.2d 1251, 1253 n.5 (Pa. 2000)).

obligation…. [T]herefore, we look first to the language of that order.") (internal quotation marks and citations omitted); Trial Court Order, 7/22/24 (single page) (warning Cunic that "[a]ny issue not properly included in the Statement timely filed and served pursuant to Pa.R.A.P.[] 1925(b) shall be deemed waived").

Moreover, Cunic's failure to develop this argument provides additional grounds for waiver. She relies solely on Section 358 of the Restatement (Second) of Torts in arguing that actual knowledge is not needed to trigger a landlord's liability, yet she fails to cite any authority establishing that Pennsylvania has adopted this section of the Restatement (Second),[4] nor does she discuss how this section pertains to the instant matter. **See** Pa.R.A.P. 2119(a) (providing that the argument shall be followed by discussion and citation of pertinent authorities); **Estate of Hailo v. McGinley**, 799 A.2d 155, 161 (Pa. Super. 2002) ("Without a reasoned discussion of the law…, our ability to provide appellate review is hampered. It is not this Court's function or duty to become an advocate for the appellant.") (internal quotation marks, citation, and brackets omitted).

---

[4] "The Restatement (Second) has not been adopted in its entirety in Pennsylvania and specific sections do not become the law in the Commonwealth until our Supreme Court adopts each individually[.]" **Sausman v. Keisserman**, No. 423 EDA 2023, unpublished memorandum at 16 (Pa. Super. filed Dec. 3, 2024). **See** Pa.R.A.P. 126(b) (providing that unpublished, non-precedential decisions of the Superior Court, filed after May 1, 2019, may be cited for their persuasive value).

Nevertheless, even if Cunic had not waived her argument that constructive knowledge of a dangerous condition is sufficient to trigger liability of an out-of-possession landlord, we would regard this claim as meritless. Douglass persuasively argues: "Pennsylvania law has consistently held that for liability for a defective condition to attach to an out-of-possession landlord, the landlord must have **actual knowledge** of the condition, must fail to disclose the same, and the condition must be reasonably undiscoverable by the tenant." Douglass' Brief at 26-27 (emphasis in original). In support of his position, Douglass provides the following overview of the development of relevant Pennsylvania law:

> ***Harris v. Lewistown Trust Co.***, 191 A. 34 (Pa. 1937), one of the earliest cases, was a tort action brought by a husband and wife after the wife was injured when a cellar stairway collapsed. [***Id.***] at 35. The cellar stairway "was in an obviously defective and decayed condition[,]" and the defendant had promised to repair it at the inception of the lease, and several times thereafter. ***Id.*** Months later, with no repairs made, the stairway collapsed and injured the plaintiff-wife. ***Id.*** The question was whether the defendant was liable to the plaintiffs. ***Id.***
>
> The ***Harris*** court noted…:
>
>> The general rule in this country … is that an agreement to repair does not impose upon the owner a liability in tort at the suit of the tenant or others lawfully on the land in the right of the tenant. … Fundamentally, this view is based upon the conclusion that liability in tort should follow as a legal incident of occupation and control. By the great weight of authority, occupation and control are not reserved through an agreement by the owner to repair.
>
> [***Id.***] The court adopted this general rule. ***Id.*** at 36. The court went on to explain that "a tenant takes the property as he finds it, with all existing defects which he knows or can ascertain by reasonable inspection." ***Id.*** It notes, however, that:

- 16 -

A well-recognized exception to this rule exists where the landlord gives the tenant possession of land containing, **to the landlord's knowledge**, dangerous hidden defects unknown to the tenant and which by reasonable inspection he cannot discover. In such a case, the landlord is guilty of active wrongdoing, because he commits an act which almost inevitably draws the tenant into a hidden trap.

[**Id.**] … (citing, *inter alia*, Restatement (**First**) of Torts § 358[ (1934)]). The **Harris** court found that "there was no hidden defect, the plaintiffs had full knowledge of the condition of the stairs," and affirmed the verdicts against them from the lower court. **Id.** at 37, 38.

[Our] Supreme Court was again asked to review this area of the law a year later in **Hayden v. Second Nat'l Bank**, 199 A. 218 (Pa. 1938). [In **Hayden**, a] mother and father had brought a tort action against a parking garage owner when their son was killed after accidentally driving into an open elevator shaft. [**Id.**] at 219. The elevator lacked safety features that would ensure the elevator doors were closed when there was no elevator car present on the floor. **Id.** The owner had not taken steps to remedy this condition. **Id.** The court reiterated the general rule of nonliability for out-of-possession landlords, but noted that:

To this rigid rule of nonliability there are but two exceptions: (1) when the landlord conceals or fails to disclose dangerous conditions **of which he had knowledge** and of which the tenant is unaware and cannot be expected to discover, and (2) where the landlord, who knows or should know of dangerous conditions, leases premises for a purpose involving the admission of many persons and has reason to believe that the tenant will not first correct the conditions.

[**Id.**] …. Then, citing to the Restatement (**First**) of Torts §§ 356-362, the **Hayden** [C]ourt noted that "these principles were recently reviewed at length in **Harris**; **from them we have no intention to depart**." **Id.** (emphasis added). The [C]ourt noted that it was "not contended that the landlord delivered possession of the premises to the tenant at a time when they contained concealed dangers **known to the landlord and unknown to the tenant**." **Id.** (emphasis added). The [C]ourt affirmed the lower court's grant of summary judgment against the plaintiffs. **Id.** at 220.

- 17 -

At the time of the **Harris** and **Hayden** Courts' endorsement of, and refusal to depart from, Section 358, it provided that:

> A lessor of land, who conceals or fails to disclose to his lessee any natural or artificial condition involving unreasonable risk of bodily harm to persons upon the land, is subject to liability for such harm caused thereby to the lessee and others on the land with the consent of the lessee or a sublessee after the lessee has taken possession, if
>
> (a)  the lessee does not know of the condition or the risk involved therein, and
>
> (b)  **the lessor knows of the condition and realizes the risk involved therein** and has reason to believe that the lessee will not discover the condition or realize the risk.

Restatement (**First**) of Torts § 358.  There is no "should have known" standard included in Section 358[, as] adopted in **Harris** and **Hayden**.  Rather, liability **only** attaches **if** the lessor "**knows of the condition**, realizes the risk, and has reason to believe that the lessee will not discover the condition or realize the risk." [**Id.**] (emphasis added).  Indeed, [the comment to] Section [358] states[:] "[I]n order that a lessor of land may be subject to liability under the rule stated in this Section[,] he must **actually know** of the condition and realize it involves a risk of harm to those who may use the land in ignorance of it." [**Id.**], *comment a*.[5]

**Id.** at 15-19 (internal brackets omitted; some emphasis added).

_____

[5] The comment to Section 358 further provides:

> The lessor is under no duty to either his lessee or those who may be expected to enter the land in his right, to inspect the land in order to discover its actual condition; nor is he under any duty to warn the lessee of a condition which he has reason to believe that the lessee will discover or of the extent of the risk involved in an obvious condition unless he should realize that the lessee is unlikely to appreciate it.

Restatement (First) of Torts § 358, *comment a*.

Douglass notes that "[t]his standard was restated … nine years later, in **Doyle**[,]" where the plaintiff suffered injuries in a gas explosion resulting from a hazardous condition in a ventilation system. **Id.** at 19. **See also Doyle**, 53 A.2d at 70-71 (rejecting the plaintiff's argument that the defendant is liable for the resulting injuries because it "knew or should have known" about the hazardous condition on its premises, and reiterating that an out-of-possession landlord is liable "when [he] conceals or fails to disclose dangerous conditions **of which he has knowledge** and of which the tenant is unaware and cannot be expected to discover") (emphasis added).

Douglass further explains:

The first real notable change in this consistent line of cases came in **Reitmeyer v. Sprecher**, 243 A.2d 395 (Pa. 1968). [There, t]he plaintiffs had executed a lease to rent a row house, the rear porch of which was in a defective condition that was known to the landlord. [**Id.**] at 396. The landlord orally promised to repair the rear porch, which induced the plaintiffs to sign the lease. **Id.** Two months later, with no repairs made, one of the plaintiffs was injured as a result of the defect. **Id.** The plaintiffs sued the landlord, but their suit was dismissed upon preliminary objections. **Id.**

On appeal, [our] Supreme Court considered the "narrow, albeit important" question of whether "a landlord is subject to liability in tort for physical harm caused to his tenant by a defective condition of the leased premises which existed when the written lease was executed and which the landlord orally promised the tenant, when the lease was executed, that he would repair." [**Id.**] … at 395. The [C]ourt noted that **Harris** dealt with a similar situation involving a promise to repair, and all parties to the appeal agreed that "unless the [C]ourt now overrules **Harris**, **Harris** governs the instant situation and requires affirmance of the court below." **Id.** at 396. However, in the intervening years between **Harris** and **Reitmeyer**, the Restatement (Second) of Torts had been published by the American Law Institute. **See generally**,

- 19 -

Restatement (Second) of Torts (1965). The plaintiffs "urged that *Harris* be reconsidered and overruled and that we adopt Section 357 of [the] Restatement (Second) of Torts…." [*Reitmeyer*, 243 A.2d at 396.] Section 357 deals specifically, and **only**, with landlord liability for bodily injury where the landlord "has contracted to keep the land in repair." *See* Restatement (Second) of Torts § 357.

The *Reitmeyer* [C]ourt recognized that since *Harris*, "critical changes have taken place economically and socially," and more prospective tenants were being forced to settle for rental properties with known, obvious defects. *Reitmeyer*, 243 A.2d at 398. In circumstances where a landlord induces tenants to enter into a lease by promising to repair the known, obvious defective condition, the [C]ourt held that liability should arise if the landlord fails to make such repairs and the condition causes injury. *Id.* Acknowledging that in *Hayden* it expressed "no intention to depart" from the principles enunciated in *Harris*, [our] Supreme Court nevertheless overruled both cases "to the extent that they are in conflict with the Restatement [(Second) of] Torts, [§] 357." *Id.* at 397-98. Importantly, the *Reitmeyer* [C]ourt did **not** specifically overrule *Harris* or *Hayden* with respect to **any other Section of the Restatement (First) of Torts, including Section 358**.

Indeed, that same year, [our] Supreme Court decided *Kolojeski v. John Deisher, Inc.*, 239 A.2d 329 (Pa. 1968)[,[6]] which reiterated the view that a landlord's **actual knowledge** of a dangerous condition and the lack of such knowledge by the tenant **is necessary in order for liability to attach**. In *Kolojeski*, a child had died as a result of ingesting lead-based paint in a rental apartment. *Id.* at 329. The child's mother sued the landlord, alleging that the landlord was negligent in allowing the "paint job to deteriorate to the point where paint peeled and fell therefrom; and in using lead[-]base[d] paint, which is poisonous if consumed." *Id.* at 330. The landlord filed preliminary objections, which the trial court sustained.

On appeal, the [Pennsylvania] Supreme Court noted the consistent line of case law above and that there was no allegation of an agreement to repair or correct the lead-based paint (which

---

[6] To clarify, *Kolojeski* was decided on March 15, 1968, shortly before the *Reitmeyer* decision, which was entered on July 1, 1968.

- 20 -

was later the critical point in **Reitmeyer**). [**Id.**] The [C]ourt noted that liability could only arise from "a dangerous condition **of which [the] appellees had knowledge and of which [the] appellants had no knowledge**." **Id.** at 330-31[ (emphasis added)]. The [C]ourt refused to "ascribe to [the] appellees a knowledge and expertise not ascribable," and affirmed the trial court's decision. **Id.** at 331.[7]

Since **Kolojeski**, the Superior Court has consistently reiterated this principle. **See Henze...**, 508 A.2d [at] 120[4] … (declining to find that an out-of-possession landlord "should have anticipated" that the defective condition would arise during the term of the lease); **Dorsey**, 591 A.2d at 719 ("The only basis upon which Continental could be held liable for Dorsey's injuries is the third exception stated previously, *i.e.,* if the lessor **has knowledge** of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee.") (emphasis added).

In **Felton by Felton v. Spratley**, [640 A.2d 1358 (Pa. Super. 1994),] similar to **Kolojesky**, a child sustained injuries after ingesting lead-based paint chips in a rental apartment and the parents sued the landlord for negligence. [**Spratley**, ]640 A.2d [at] 1359…. The plaintiffs "acknowledged that the defendants lacked actual notice of the presence of lead-based paint in the apartment, but … charged that the '[d]efendants should have known, which must be resolved by the trier of fact.'" **Id.** at 1360. The plaintiffs advanced "the novel argument" that knowledge of the dangers of lead-based paint "'should have been known … to one who rents low-income housing, such as the defendants.'" **Id.** at 1361 ([citation omitted]). They attempted to "buttress their 'constructive notice' assertion" by citing to various health codes,

---

[7] We emphasize that the Restatement (Second) of Torts was published prior to the **Kolojeski** decision; however, the Court did not adopt Section 358 of the Restatement (Second) therein. **See Kolojeski**, 239 A.2d at 330-31; **compare** Restatement (Second) of Torts § 358(1)(b) (stating that the lessor may be subject to liability if "the lessor knows **or has reason to know** of the condition, and realizes **or should realize** the risk involved…") (emphasis added), **with** Restatement (First) of Torts § 358(b) (stating that the lessor may be subject to liability only if "the lessor knows of the condition and realizes the risk involved therein…") (emphasis added).

newspaper articles, and Acts of Congress which discussed the dangers of and/or restricted the use of lead-based paints. *Id.*

The Superior Court rejected this "constructive notice" theory and held that "***Kolojeski's*** holding that a property owner, **absent actual notice** of a hazardous condition on the premises, will **not** be liable to a tenant for injuries flowing from such a condition **is still law in this Commonwealth**." [*Id.*] … at 1362 (emphasis added).

Douglass' Brief at 20-25 (internal brackets, ellipses, and footnote omitted; some emphasis added).

Based on the foregoing, Douglass maintains that Section 358 of the Restatement (First) of Torts, which requires actual knowledge on the part of the landlord, remains the law in this Commonwealth. ***See id.*** at 25-26; ***see also id.*** at 25 (noting that Cunic "completely ignore[s] the above case law in arguing that there is no 'actual knowledge' requirement"). As Cunic has failed to provide any authority stating otherwise, we would reject her argument that the trial court should have applied Section 358 of the Restatement (Second) of Torts. ***See Sausman***, 423 EDA 2023 at 17 ("[T]his Court is obligated to follow the precedent set down by our Supreme Court. It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court.") (quoting ***Bell v. Willis***, 80 A.3d 476, 479 (Pa. Super. 2013)).[8]

_____

[8] We acknowledge that the trial court stated, "The relevant section of the Restatement (Second) of Torts is [S]ection 358[.]" TCOO at 6. While its reference to Section 358 of the Restatement (Second) rather than the Restatement (First) may have been in error, we would deem this error harmless, as the trial court's decision is consistent with the Restatement

*(Footnote Continued Next Page)*

*Second Issue*

In her second issue, Cunic claims that the trial court failed to view the evidence of record in a light most favorable to her, as the nonmoving party. Cunic's Brief at 19. Specifically, she points to the trial court's determinations that "[t]here is no evidence … [Douglass] had any prior knowledge of the alleged defects in the stairs/carpet[,]" *id.* at 20 (quoting TCOO at 7), and that even if Douglass did have notice of the rippled carpet, "[he] had every reason to believe that [Cunic] would discover[] the condition[,]" *id.* at 24 (quoting TCOO at 8). Cunic insists that the evidence of record directly contradicts these findings and that, had the trial court properly viewed the evidence in her favor, she would have been able to establish a *prima facie* case of negligence against Douglass. *Id.* at 19-20, 24. No relief is due on this claim.

In order to establish a *prima facie case* of negligence, a plaintiff must prove four elements: a duty of care imposed by law, breach of the duty of care, a causal link between the defendant's breach and the plaintiff's injuries, and actual harm. *See Grove*, *supra*. At issue here is whether Cunic produced

---

(First) of Torts § 358, which was expressly adopted by the Pennsylvania Supreme Court in **Harris** and **Hayden** and has been repeatedly reaffirmed by Pennsylvania case law. **See Harris**, **supra**; **Hayden**, **supra**; Restatement (First) of Torts § 358 (requiring actual knowledge of a dangerous condition to impose liability on a landlord). **See also** TCOO at 8-9 (determining that Douglass had no prior knowledge of the alleged defect in the stairs/carpet and that Cunic failed to present evidence to meet an exception to the general rule of nonliability for an out-of-possession landlord).

sufficient evidence to establish that Douglass owed her a duty of care. As discussed *supra*:

> The general rule is that the landlord who is entirely out of possession and control is not liable for bodily harm caused to the tenant and those upon the leased premises in the latter's right by reason of any dangerous condition existing when the tenant took possession. In other words, such a landlord owes no duty to persons coming upon the premises for conditions present at the time of the tenant's entrance.

***Dorsey***, 591 A.2d at 719 (quoting ***Doyle***, 53 A.2d at 71). However, this rule is subject to the following exception: "A landlord out of possession may incur liability … if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee[.]" ***Id.***[9] Thus, whether Douglass had **actual knowledge** of the purported dangerous condition **at the time Cunic took possession** of the Leased Premises is a crucial element in establishing a negligence claim against Douglass. Absent such knowledge, Douglass would owe no duty to Cunic pertaining to such condition. ***See Spratley***, 640 A.2d at 1362.

---

[9] To the extent that Cunic argues she has established a *prima facie* case of negligence against Douglass in accordance with Section 358 of the Restatement (Second) of Torts, which only requires that the landlord knew **or should have known** of the dangerous condition, ***see*** Cunic's Brief at 22-23, we reiterate that Cunic has failed to cite to any authority stating that this section of the Restatement (Second) of Torts has been adopted in Pennsylvania. ***See Sausman***, 423 EDA 2023 at 16 (noting that "specific sections do not become the law in the Commonwealth until our Supreme Court adopts each individually").

Regarding the knowledge component, we agree with Douglass' argument that Cunic's statements as to his purported admissions are misleading. ***See*** Douglass' Brief at 28 n.3. For instance, Cunic contends that Douglass "admitted to seeing ripples on the carpet." Cunic's Brief at 20 (citing N.T. Douglass Depo., 8/26/22, at 48). However, Douglass persuasively argues that Cunic herself admits:

> Douglass was looking at photos taken "**after** [the] incident" when he admitted to seeing the ripples. [Cunic's Brief at 20.[10]] Cunic points to absolutely no evidence or admissions that Douglass had any knowledge of the condition of the carpet **before** the incident. In fact, when directly asked if the carpet had ever been flat and taut without ripples, Cunic acknowledges that Douglass testified[,] "I can't attest to that[…]." ***Id.*** at 21[ (citation omitted)[11]].

***Id.*** at 30-31 (emphasis added).

Likewise, Douglass notes Cunic's attempt "to argue that [he] knew, prior to the incident, how the carpet was installed, and that the installer caused the ripples when stapling the carpet to the stairs." ***Id.*** at 31; ***see also*** Cunic's Brief at 21 ("[Douglass] … stated that 'those ripples on the steps is [*sic*] from

---

[10] During his deposition, Douglass was shown "a set of photographs" that were taken by Douglass and his wife in May 2020, **after** learning of the incident. ***See*** N.T. Douglass Depo. at 47-48, 61-62. Cunic's counsel instructed Douglass to "go to the third page of the file." ***Id.*** at 47. After Douglass confirmed that the third page contained a picture of the steps in question, Cunic's counsel asked, "When you look at the carpet that's on these steps, do you see ripples in the carpet?" ***Id.*** at 48. Douglass replied, "Yes." ***Id.***

[11] When asked whether the carpet on the stairs had ever been taut and flat without ripples since he purchased the property, Douglass replied, in full, "I can't attest to that from the time I bought it. I don't really – I'm going to guess it was, but I can't really give you a definite answer from fifteen years ago." N.T. Douglass Depo. at 53.

the installer.  Wherever he put a staple, that's where those ripples go to.'")

(quoting N.T. Douglass Depo. at 48).  He argues:

> She ignores that, when specifically asked about his knowledge of how the carpet was installed, he testified[,] "**I wasn't sure how it was until the accident.**  I went up there and looked, and when I looked at the wrinkles in the carpet[,] if you take your hand along the back of the steps, that's where they stapled it."  [N.T.] Douglass Depo[.] at 49 … (emphasis added).  Cunic points to no evidence that Douglass knew how the carpet was installed **before** the incident.

Douglass' Brief at 30-31 (emphasis added).

Cunic has failed to allege sufficient facts from which a jury could reasonably find that Douglass had actual knowledge of the alleged dangerous condition at the time possession was transferred to Cunic.  In fact, the record is replete with testimony indicating the opposite.  For example, Douglass testified during his deposition, "In my opinion, there was nothing wrong with that carpet…."  N.T. Douglass Depo. at 66.  The following colloquy then took place between Douglass and his counsel:

[Counsel]:      Before this incident…, did you ever notice any issues with the steps?

[Douglass]:     No.

[Counsel]:      … [B]efore the incident in this case, had you modified the steps in any way?

[Douglass]:     No.

[Counsel]:      Have you ever walked up and down the stairs at issue in this case?

[Douglass]:     Yes.

[Counsel]:       And when you walked up and down the stairs at issue in this case, did you ever notice any issue with the steps?

[Douglass]:     No.

*Id.* at 81-82. When asked if he was aware of any dangerous or defective conditions before Cunic moved into the Leased Premises, Douglass replied, "No." *Id.* at 89. When asked whether anyone had reported any issue with the carpet on the stairs prior to the incident, Douglass indicated, "No." *Id.* at 99. Moreover, Cunic does not aver, nor does our review of the record reveal, that she ever reported — prior to the incident — any issue with the stairs/carpet to Douglass. *See generally* N.T. Cunic Depo, 5/24/22; *accord id.* at 53 (Cunic's admitting that she walked the steps every day; Cunic's stating, "No, I never had an issue[,]" when asked whether she ever had an issue with the steps before the incident).

We discern no genuine issue of fact regarding whether Douglass had actual knowledge of a dangerous condition on the Leased Premises at the time possession was transferred to Cunic, or at any time prior to the incident. As Douglass asserts, Cunic's averments that Douglass knew of the dangerous condition are based on nothing more than speculative assumptions, which cannot survive summary judgment. *See* Douglass' Brief at 32-33; *see also Davis v. Wright*, 156 A.3d 1261, 1273 (Pa. Super. 2017) ("A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor. In fact, the trial court has a duty to prevent

questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation.").

We discern no abuse of discretion or error of law in the trial court's determination that, "while viewing [the] facts in the light most favorable to [Cunic], [Cunic] has failed to present evidence to meet an exception to the general rule that a landlord out of possession is not responsible for injuries suffered on a leased premises." TCOO at 8-9. Accordingly, we affirm the trial court's July 1, 2024 order granting summary judgment in favor of Douglass.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>6/26/2025</u>